SALLIE C. SINGER, *Appellant*, V. J. LUTHER TAYLOR
et al., as Individuals and as Executors, etc., *Appellees.*

No. 18,304.

SYLLABUS BY THE COURT.

1. WILL—*Undue Influence—Jury Called—Jury Discharged—No Prejudicial Error.* The withdrawal of a case from a jury called to aid the court in determining questions of fact in an action to set aside a will because of undue influence at the conclusion of plaintiff's evidence is not a ground of error, and could not have operated to the prejudice of the plaintiff since no substantial testimony of undue influence was produced.

2. —— *Unequal Division of Property—No Presumption of Undue Influence.* The fact that the property of a testator was unequally divided by him in his will does not, of itself, raise a presumption of undue influence.

3. —— *Same.* The plenary power in a testator to dispose of his property as he may see fit includes the right to make an unnatural or an unreasonable disposition of his property.

4. —— *Interpretation of the Word "Paid."* After making certain specific bequests and the giving of a life estate in the remainder of his property to his wife the testator provided in his will that at the death of his wife, "I direct and it is my will that the residue of my estate shall be paid to my beloved son." *Held,* that the word "paid," interpreted in the light of the language in the will, is a word of gift and will convey the residue of the estate to the son.

5. —— *Presumption that Testator Disposed of All His Property.* In the absence of a definite provision to the contrary, it is to be presumed that a testator intended to dispose of his whole estate and did not intend to die intestate as to any part of it.

Appeal from Crawford district court. Opinion filed July 5, 1913. Affirmed.

*F. B. Wheeler, C. S. Denison, O. T. Boaz, L. W. Johnson,* all of Pittsburg, and *G. L. Dunn,* of Topeka, for the appellant; *R. W. Blair, B. W. Scandrett,* and *C. A. Magaw,* all of Topeka, of counsel.

*Nelson Case,* of Oswego, *John J. Campbell,* of Pittsburg, and *B. S. Gaitskill,* of Girard, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Sallie C. Singer to contest the will of her father, Joseph I. Taylor, on the ground that it was the product of undue influence, and she also asked to have some of its provisions construed. During his lifetime Joseph I. Taylor accumulated considerable property, which is estimated by appellant to be of the value of $250,000. He died on February 6, 1910, leaving a widow, Mary S. Taylor, a daughter, Sallie C. Singer, who is the appellant, and a son, J. Luther Taylor, one of the appellees. The will provided that his wife should have a life estate in all of his property, subject to a number of specific gifts. One of these was a gift of $500 to his daughter, Sallie, for her immediate use, and she was also given the income to be derived from $10,000, which amount his executors were directed to invest in interest-bearing securities, and at her death these were to become a part of the residue to the estate. The executors were directed to invest $15,000 of the estate, the income of which should be paid to his son, J. Luther Taylor, until the death of Mary S. Taylor, when this fund should pass absolutely to J. Luther Taylor. The ninth paragraph of the will was as follows:

"At the death of my beloved wife, Mary S. Taylor, I direct and it is my will that the residue of my estate shall be paid to my beloved son, J. Luther Taylor."

In accordance with a provision of the will the widow and son were appointed executors of the will without bond. In the trial of the case the court called a jury to aid it in determining the question of undue influence, but after all the evidence of appellant had been introduced appellees challenged the sufficiency of the evidence and on their motion the court ruled that:

"The case should be withdrawn from the consideration of the jury for the reason that the evidence offered on behalf of the plaintiff does not warrant the

court in submitting the question of fact to the jury for its consideration or for the purpose of assisting the court in making its conclusion on the second count of the plaintiff's amended petition herein filed."

The court found that the will was valid, that it disposed of the entire estate of the testator, that appellant was entitled to no more than the specific gift of $500 and the income from the $10,000 investment, after which that fund became a part of the residuary estate, and that so much of the estate as shall not be used by Mary S. Taylor in her lifetime shall become, at her death, the absolute property of J. Luther Taylor.

It is insisted that the withdrawal of the case from the consideration of the jury was equivalent to sustaining a demurrer to the evidence, and that while the findings of the jury are only advisory in cases of this kind the ruling of the court nevertheless operated unjustly towards appellant, and that it was error for the court to weigh any of the evidence until the evidence of appellees had also been received. The calling of a jury was, of course, a matter within the discretion of the court. In such cases it may avail itself of the aid of a jury and is at liberty to adopt or reject the findings which the jury makes. Being a matter of discretion, the court, on its own motion, may dispense with the services of the jury at any stage of the trial, being careful always to see that the parties are not hampered in presenting the evidence and arguments to the court. The rules governing the presentation of a case to the jury differ in some respects from those applicable in trying a case to the court alone, and hence in some instances it might be an injustice to try one side of the case to the jury and the other to the court. (*Vickers v. Buck*, 65 Kan. 97, 68 Pac. 1081.) Here, however, no prejudice could have resulted from the action of the court as it does not appear that appellant was denied the right to present fully any evidence or argument to the court that she chose after the jury had been withdrawn. Again,

there was no substantial testimony offered by appellant tending to establish undue influence, and hence it is immaterial whether we view the testimony as would be done on a trial before the jury as a matter of right or as in a case where the jury is called in an advisory capacity. Under the rules laid down in *Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634, 22 L. R. A., n. s., 1024, there was nothing in the case which approached fraud or undue influence such as invalidates wills. The unequal disposition of the residue of the estate after the death of the mother naturally attracts attention, and it is argued that it must have been the result of improper influence exerted upon the testator by the wife and son. There was testimony of confidential relations between the testator and his son, and that as a result the testator frequently consulted the son as to matters of business and relied greatly on his judgment and advice. It has been determined, however, that the existence of confidential relations between the testator and the beneficiary raises no presumption of undue influence and does not even shift the burden of proof upon the beneficiary to prove that the testator acted of his own free will in disposing of his property. Nor does the unnatural or unequal disposition of the property create a presumption of undue influence. (*Ginter v. Ginter,* supra.) While an unnatural disposition of property may be considered in connection with evidence of undue influence it is ineffectual as proof in the absence of other evidence that undue influence was exercised, because in the absence of statutory restrictions every one with testamentary capacity has the right to dispose of his property according to his own desires. This plenary power of disposition of the owner as he may see fit of course includes the right to make an unnatural or unreasonable distribution. It follows, too, that he may make what would seem to most persons to be an absolutely unjust discrimination among those having a

Singer v. Taylor.

claim on his bounty. When such a discrimination is made courts scrutinize closely the circumstances surrounding the execution of the will to see if it was made with sufficient capacity and is the free act of the testator. No question is made here as to the capacity of the testator and it appears that he was mentally vigorous and also independent in both thought and action. There was an attempt to show that he often yielded to the opinion of his wife in matters about the home, but there is nothing to indicate that he was under her domination or the restraint of any one in making a disposition of his property. She appears to be partial to the son, and evidently prefers that the property should go to him as the will provides, but the testimony does not show that the will of the testator was overcome by hers nor by that of the son, or that there was coercion of any kind by any one. In view of the value of the estate and the smallness of the portion given to the daughter, the inequality of the portions to the two children is not easily accounted for, but the will can not be impeached because the disposition appears to us to be either unreasonable or unaccountable. The property was his own and, being capable and without restraint, he could give or withhold as he might elect.

Another question is raised, as to the meaning and effect of the ninth paragraph of the will, which provides that:

"At the death of my beloved wife, Mary S. Taylor, I direct and it is my will that the residue of my estate shall be paid to my beloved son, J. Luther Taylor."

The trial court construed this provision to mean that at the death of Mary S. Taylor the whole residuary estate should pass to and become the absolute property of J. Luther Taylor. The appellant contends that the word "paid" as used in this clause does not fairly imply the making of a gift, that its ordinary meaning is to satisfy claims or obligations as, for instance, to dis-

charge an obligation to a creditor or to hand over that which is due, and as used here can mean no more than that the bonds, securities and other personal property should be delivered over to J. Luther Taylor upon the death of his mother. This view would leave the principal part of the estate undisposed of by the will, while all of its provisions unite in showing an intention by the testator to dispose of his entire property by that instrument. As was said in *Ernst v. Foster,* 58 Kan. 438, 49 Pac. 527:

"It is a general rule that a will should be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the general purpose of the testator as gathered from the entire instrument." (Syl. ¶ 3.)

Looking at the will in its entirety it is clear that the word "paid" was used without reference to its technical meaning as a settlement with a creditor or the discharge of an obligation, but was used in its wider sense as a word of gift. The will purports to dispose of all the property of the testator as he gave his wife a life estate in and the use of all the property during her life, subject to certain specific gifts. The term "paid" was used as a word of gift in other parts of the will. For instance, in the third paragraph, instead of stating that the daughter was given the income from $10,000 there was a direction that she should be paid the income from that fund by the executors. The same is true as to the provision directing the executors to pay the income from a fund of $15,000 to J. Luther Taylor. In the sixth paragraph the executors are directed to pay to Baker University, in cash or in securities, the sum of $3000, and later in the paragraph the direction to pay is spoken of as a bequest. In other provisions instead of expressly stating that the money or property is given the words "pay" or "paid" are used in directions for distribution given to the executors. In earlier provisions of the will the testator referred to the residuary

estate, directing that certain funds should, in certain events, become a part of the residue, and that when all specific bequests had been paid and the life estate had been ended by the death of his wife there was a direction that the residue of the estate should be paid to the son. Manifestly, the term "paid" was used as the equivalent of "given." A testator is not confined to particular words in making a legal disposition of his property, and courts give effect to the manifest intent of a testator although apt legal terms are not used by him. So it has been said:

"In construing a will the meaning of the words used will be expanded or restricted so as best to express the purpose and intent of the testator." (*Blair v. Blair,* 82 Kan. 464, syl. ¶ 1, 108 Pac. 827.)

Nothing in the will indicates an intention to leave a large portion of the estate undisposed of, but, on the contrary, all the inferences derivable from its language proceed on the assumption that the entire estate is to be apportioned among specified beneficiaries. In the absence of a definite provision to the contrary it is to be presumed that the testator did not intend to dispose of a fraction of his property and die intestate as to the remainder. It has been said:

"The natural and reasonable presumption is that when so solemn and important an instrument as a will is executed, the testator intends to dispose of his whole estate, and does not intend to die intestate as to any part of his property." (30 A. & E. Encycl. of L. 668; see, also, 40 Cyc. 1409.)

The words of a will are to be read in the light of the other language in the will and to be given effect according to the manifest intention of the testator. In *Lohmuller v. Mosher,* 74 Kan. 751, 87 Pac. 1140, a devise was made to a daughter of the testator of certain property for her use during her life and "after her death the property to fall to her children." The words

"fall to her, children" were interpreted so as to create and carry to the children the remainder in fee. In *Roosa v. Harrington*, 171 N. Y. 341, 64 N. E. 1, the testator used the words "to pay" and it was held that as used they were not to be taken in a technical sense but as words of gift.

Other authorities on this or like terms are: *Sheets' Estate*, 52 Pa. St. 257; *Cover v. Stem, Ex'r*, 67 Md. 449, 10 Atl. 231, 1 Am. St. Rep. 406; *Den v. Wortendyk*, 7 N. J. Law, 363; *In re Tatum*, 69 N. Y. Supp. 501, 34 Misc. Rep. 25; *Clarke's Appeal from Probate*, 70 Conn. 195, 39 Atl. 155.

Finding no material error, the judgment of the district court will be affirmed.