No. 18,766.

MARGARET DREISBACH, *Appellant,* V. JACOB SPRING, as Executor, etc., et al., *Appellees.*

SYLLABUS BY THE COURT.

1. WILL—*Action to Set Aside—Supreme Court Not a Trier of Facts.* Section 581 of the civil code contains nothing requiring or authorizing this court to retry facts passed upon by the trial court when its conclusion is supported by competent testimony.

2. WILL—*Testamentary Capacity—Unreasonable, Harsh, Unjust Bequests.* When testamentary capacity is established or unsuccessfully attacked, a will can not be set aside because juries or courts called upon to review the disposition of property made by the testator may feel that such disposition was unreasonable, unaccountable, harsh or unjust.

3. WILL—*Acceptance of Bequest by Legatee no Estoppel to Contest.* The acceptance by a legatee of a small bequest, when ignorant of the facts and of her rights, will not estop such legatee from maintaining a suit to set aside the will, the petition tendering back such bequest with interest.

4. WILL—*One Illegal Provision Does Not Invalidate the Entire Will.* When one provision of a will falls for illegality the remainder is not thereby avoided when it appears that the illegal part has reference to a contingency so remote and improbable as to lead fairly to the conclusion that the testator did not deem it of controlling importance.

5. WILL—*Action to Set Aside—Construction of Will Not an Issue.* In an action to set aside a will for mental incapacity, undue influence and void and uncertain provisions, the answers being general denials in effect, this court will not on appeal grant the request of a party made here for the first time to construe the will.

Appeal from Nemaha district court; WILLIAM I. STUART, judge. Opinion filed November 14, 1914. Affirmed.

*Abijah Wells, Ira W. Wells,* both of Seneca, and *John J. Schenck,* of Topeka, for the appellant.

*Horace M. Baldwin, Rufus M. Emery, Charles H. Herold,* and *Rufus M. Emery, jr.,* all of Seneca, for the appellees.

The opinion of the court was delivered by

WEST, J.:  Abraham Blauer, born in Switzerland, moved to Nemaha county, Kansas, in 1868, was married in 1869, and settled upon a farm where he and his family lived until 1898, when they moved to the town of Bern.  The wife died in 1900.  The only child, a daughter, Margaret, was born in 1870, and married at the age of nineteen to a Mr. Grossenbacher, by whom she had four children, John, Fritz, Sophia, and Marguerite.  In 1890 she and her husband moved upon the farm with her parents.  Her husband died in 1897, and in 1898 she joined her parents at Bern.  After her mother's death she continued to live with and keep house for her father.  In September, 1902, she was married to Mr. Dreisbach, by whom she had one daughter, Gladys, now about nine years old.  Her husband died in 1905, leaving her several thousand dollars' worth of property.  Mr. Blauer was strongly opposed to her marriage with Mr. Dreisbach.  Upon her marriage she went to live with her husband at his home.  In July, 1903, Mr. Blauer made a will providing that all of his property at his death, after the payment of debts and a bequest of two hundred dollars to his daughter, should be held in trust by the executor or administrator for the use and benefit of his four grandchildren, John, Fritz, Sophia, and Marguerite Grossenbacher, "or the survivors of them, during their natural lifetime, but only the net income from said real and personal property thus held in trust shall be paid to my said grandchildren or their survivors in equal shares, said income to accumulate in the hands of the trustee until each of said grandchildren becomes of age, when its respective share is to be paid to it, and thereafter to be paid annually, and at the death of the last survivor of my said four grandchildren all of the estate held in trust, both real and personal, shall be equally divided between the

heirs of my said grandchildren being issue of their bodies, but should they all die without issue, then said estate is to go to the heirs at law of my brothers and sisters and their heirs and assigns forever." In March, 1905, he executed a codicil, simply making a change in the name of the trustee, but reciting that the former was still his last will and testament and that he again published and declared that he desired the devises, bequests and provisions carried out as therein declared and stated. The testator died in July, 1908, leaving an estate worth in the neighborhood of $60,000. In July, 1911, the plaintiff, Margaret Dreisbach, brought suit against the executor and the four beneficiaries, alleging, among other things, that the will provided for the alienation of the property for an indefinite and unreasonable period, that it was void as offending the rule against perpetuities, and that at the time of its execution the testator was mentally unsound and was unduly influenced by his financial agent and business manager, Jacob Spring. It was further alleged that the plaintiff accepted the two-hundred-dollar bequest in ignorance of the facts and her rights, and she tendered the amount thereof back with interest. The answers amounted, in substance, to general denials. An extended trial followed, and the controversy hinged almost entirely upon the condition of the testator's mind.

The theory of the plaintiff was and is that not only was the testator enfeebled in health for some time before making the will, but that at the time of its execution he was suffering from a delusion that his daughter was no longer virtuous, there being no cause or reason for such notion. Numerous witnesses were examined as to the mental condition of Mr. Blauer, and the trial court found and determined that the daughter was and is of unimpeachable moral character, and that the father was of sufficient mental soundness to make the will in question understandingly, and that he was not

Dreisbach v. Spring.

under any undue influence. It is needless to review or rehearse the evidence upon the testator's mental condition for the reason that there is sufficient in the record to sustain and support the conclusion reached by the trial court.

The plaintiff insists that it does not appear from the record that substantial justice has been done by the trial court, but on the contrary the greatest injustice has been done, and that under section 581 of the civil code, "It is the duty of this court to read the evidence in this case in order that substantial justice is done the appellant and her children." There is nothing, however, in this provision of the code which makes this court a retrier of facts passed upon by the trial court when the conclusion reached is supported by competent testimony.

It is also urged with force and earnestness that the apparent desire of the testator to disinherit his only child is a matter for serious consideration, especially upon the question of his mental capacity. The *jus disponendi* is such, however, that when testamentary capacity is established or unsuccessfully attacked, the owner of property may dictate to whom it shall go at his death although the court called upon to review his decision may feel that it was unreasonable, unaccountable, harsh or unjust. (*Ginter v. Ginter,* 79 Kan. 721, syl. ¶ 9, 101 Pac. 634; *Kerr v. Kerr,* 85 Kan. 460, 116 Pac. 880; *Singer v. Taylor,* 90 Kan. 285, 289, 133 Pac. 841.) The plaintiff, the only child, was given very little schooling and was required to work on the farm very much as would have been expected of a son, and appears to have been a kind and dutiful daughter and to have taken good care of her father while living with him before her second marriage. It seems regrettable, therefore, that the testator desired in his will, although reciting that he had at various times during his life given her money, to give her the paltry sum of two hundred dollars and manifestly intended that this should

be the limit of her participation in his estate; but if juries and courts were permitted to overrule the choice made by testators and substitute their own notions of fairness and propriety, the right of testamentary disposal of property would be too tenuous and uncertain to possess substantial value.

The court held void as in violation of the rule against perpetuities that clause providing that should the four grandchildren all die without issue the estate should go to the heirs at law of the testator's brothers and sisters and their heirs and assigns forever. All parties appeared to acquiesce in the view of the court as to this clause, but the plaintiff contends that this void provision destroys the entire will; that the general scheme of the testator was to so devise the property that it should under no circumstances go to the plaintiff or her children, and yet should her children die without issue she would be entitled to take as heir at law of the testator. The rule is invoked that when the legal and illegal portions of the will are so connected as to constitute an entire scheme which would be defeated by the rejection of the illegal portion, the whole must fall, and numerous authorities in support of this rule are cited. The appellant urges that an examination of the will shows a scheme so to tie up the property that neither the daughter nor any of the testator's grandchildren should ever receive any of it or any substantial benefits therefrom. The defendant suggests, on the contrary, that it seems plain from the will that the general scheme was to conserve the property in the hands of the trustee so that the Grossenbacher children and the heirs of their bodies should have not only the net income but the entire estate, and that in the very remote and improbable contingency of their all dying without issue the clause was inserted that the estate should go to the heirs of the testator's brothers and sisters at law and their heirs and assigns. We think it quite plain that Abraham Blauer so disliked his second son-in-law that he did not desire

his widow or his child by her to receive any of the estate, but that he had sufficient affection for her children by her former husband to intend that it should go to them and the heirs of their bodies. It hardly seems reasonable, however, that he could have deemed it sufficiently probable that they would all die without issue to have regarded the void provision made in that event as of equal importance with the other desires expressed in the will. Still more improbable would it be that these four grandchildren would all die without issue during the life of their mother so that she could take as heir of the testator. We do not find sufficient basis, therefore, in the evidence and the circumstances shown thereby to apply the rule that if a part fall the whole must also fall.

We agree with the appellant that the acceptance by her of the two-hundred-dollar bequest under the circumstances shown does not estop or preclude her, in view of the tender made in her petition, from maintaining her suit. (*Medill v. Snyder*, 61 Kan. 15, 58 Pac. 962.)

It is also argued that the will is void for uncertainty for the reason that neither the mother nor any of her five children may receive any portion of the property, but at.most only the net income; that it is impossible to determine whether the share of each of the four grandchildren named is to be paid when he becomes of age or when the youngest becomes of age, or whether in case of the death of all four the property is to be divided among the heirs of their bodies *per capita* or *per stirpes*. But we do not regard these provisions sufficiently uncertain to impair the validity of the instrument.

The counsel who appears as guardian ad litem for the minor defendants has presented, both orally and in writing, an able argument in support of his theories as to the construction and effect of certain provisions found in the will. He requests that we construe the

instrument, and urges that we hold the trust to be passive, the devise an executed one to the grandchildren, and the estate an estate tail which may be barred by the deed of such grandchildren when the youngest becomes of age. But the pleadings and proceedings show no request for construction made to the court below, and being made here for the first time we do not deem it fitting to consider it.

Should a construction be desired a suit for that purpose can be brought in the proper forum in the usual way.

Having considered every point presented and finding no material error in the record, the judgment is affirmed.