CHAS. M. THACKER, ⎭

*In re* BLACKFEATHER'S ESTATE.
CAMPBELL v. PROPHET.

No. 5520.   Opinion Filed December 7, 1915.

(153 Pac. 839.)

1.   WILLS—Contest After Probate—Evidence.   Under section 6219, Rev. Laws 1910, which provides for contesting a will after probate, the evidence introduced at such contests must relate to facts discovered after the probate of the will.

2.   APPEARANCE—"General Appearance" — Probate — Notice — Contest.   In contests instituted under section 6219, **supra**, where the heirs were not served with notice of the probate of the will, but where the contestants invoke the jurisdiction of the court

upon the merits of the case, this will operate as a general appearance, and the contest in such cases should be tried upon its merits.

3. **WILLS—Contest—Appeal—Parties.** Where the contest is instituted by one party, under sections 6503 and 6504, Rev. Laws 1910, a second party, who fills the requirements of these sections of the statute, may take an appeal to the district court.

4. **SAME—Testimentary Capacity—Presumption.** The fact that the testator was an aged person in no way operates against the validity of the will, but every presumption tends to uphold its validity.

5. **SAME—Burden of Proof.** A presumption of sanity goes with every one, and the burden of proving unsoundness of mind in a will contest rests upon the contestant.

6. **SAME—Revocation of Probate—Grounds.** The only thing that courts and juries should be concerned with in will contests is whether or not there was testamentary capacity, and they are not warranted in reviewing the disposition of property made by a testator from the fact alone that such disposition was unreasonable, harsh, or unjust.

7. **SAME—Testamentary Capacity—Sufficiency of Evidence.** Evidence in this case examined and held to sustain fully the sound and disposing mind and memory of the testator, and to uphold the validity of the will.

(Syllabus by Mathews, C.)

*Error from District Court, Craig County;*
*Preston S. Davis, Judge.*

Proceedings by Maria Prophet against L. B. Campbell, executor, to revoke the probate of the will of Nancy Blackfeather, deceased. From a judgment revoking the probate, the executor brings error. Reversed and remanded, with directions.

*W. H. Kornegay,* for plaintiff in error.

*Clyde McGary, Wm. P. Thompson,* and *Anselan Buchanan,* for defendant in error.

Opinion by MATHEWS, C. This is an appeal by L. B. Campbell, executor of the will of Nancy Blackfeather, deceased, from a judgment of the district court of Craig

county revoking the probate of the will of the said Nancy Blackfeather, said will having been admitted to probate in the county court of Craig county on the 15th day of February, 1909, and letters of administration having issued to L. B. Campbell.

On the 26th day of February, 1909, one Ella Tucker filed her petition to revoke the probate of the said will, said petition conforming to the requirements of section 6219, Rev. Laws 1910. The contest of the said Ella Tucker was heard on the 1st day of April, 1909, by the county judge, who found against the contestant and refused to revoke the former probate of the will. On the 1st day of May, 1909, Maria Prophet gave the following notice of appeal:

"NOTICE OF APPEAL.

"To Theo. D. B. Frear, Judge of the County Court:

"Maria Prophet, one of the heirs at law of Nancy Blackfeather, deceased, herewith gives notice of an appeal from the order of the court, rendered in this matter on the 1st day of April, 1909, overruling contest of probate of will filed by Ella Tucker, a portion of which order is as follows: 'It is therefore by the court, ordered, considered, and adjudged that the will admitted to probate by order of this court on the 15th day of February, 1909, as the last will and testament of Nancy Blackfeather, deceased, is valid and was duly and legally admitted to probate on the day and year last above mentioned.' The grounds of said appeal are as follows: The court erred on both questions of law and of facts in not sustaining the contest of probate of will by Ella Tucker, one of the heirs of deceased, for the reason that the testimony showed:

"I. That said purported will was never properly executed and acknowledged.

"II.   That no notice of the probate of such purported will was ever served upon the heirs as is required by law.

"III.   That at the time of the execution of the purported will, deceased was not of sound mind, was not competent to make a will, was under duress and that undue influence was brought to bear on her.

"MARIA PROPHET."

At the same time she filed the following verified affidavit:

### "AFFIDAVIT ON APPEAL.

"Maria Prophet being first duly sworn states:   That she is 47 years of age, and that she resides in Ottawa county, State of Oklahoma, and that her post office address is Seneca, Missouri.   Affiant further states that she was a niece of Nancy Blackfeather, deceased, and as such niece, is interested in the estate of Nancy Blackfeather; that no notice was ever served upon her of the probate of the will of said Nancy Blackfeather, deceased, nor did she have any knowledge that said Nancy Blackfeather ever made or attempted to make a will; that she is a party interested in the probate of such will and as such niece of deceased, she appeals from the decision of the court made and entered on the 1st day of April, 1909, admitting to probate the purported will of Nancy Blackfeather, deceased, and overruling the contest of Ella Tucker.   Affiant further states that she had no knowledge of the hearing of the contest of said will after probate; that she was not a party of said hearing, and that she was not present at such hearing.

"MARIA PROPHET."

The case was tried to a jury, who found for the contestant, and the court made finding of facts and conclusions of law, which also were in favor of the contestant. The executor has appealed, and the first assignment of error we will notice is the contention of plaintiff in error

that there was no evidence introduced at the trial of this cause showing that the evidence relied upon for setting aside the probate of the will had been discovered after the will had been admitted to probate. There is merit in this contention, with the exception of the second ground of contest, which alleges that no notice of the probate of the will was ever served upon the heirs as required by law.

Each of the heirs testified at the trial that she had not received any notice of the probate of the will, and there is no evidence, record or otherwise, showing that such notices were mailed as the statute provides. The plaintiff in error offered no evidence on that point, and did not attempt to show that the post office addresses of the heirs were unknown to him at the time of the filing of the petition for the probate of the will.

If the service of notice had complied with the statute, then, under the decision in *Re Impunnubbee's Estate*, 49 Okla. 161, 152 Pac. 346, by Chief Justice Kane, the contention of plaintiff in error would be upheld by us here, because all the evidence introduced by defendant in error upon the merits of the contest was evidence of facts that took place at the time and prior to the execution of the will in controversy, and the main witnesses to these facts were the contestants themselves and near relatives, showing that the facts urged against the competency of the maker of the will were within the knowledge of the contestants long before the will was filed for probate, and were not facts discovered since the probate of the will.

If section 6219, Rev. Laws 1910, providing for the contest of a will after probate and being the statute under which contestants proceeded, needs any judicial

interpretation, then we find that interpretation in the above-cited case of *In re Impunnubbee's Estate,* which holds that, as specified in this statute in very plain and unambiguous language, the grounds of contest of a will after probate must be based upon evidence discovered after the probate of the will, and in such a trial evidence in the knowledge of the contestant at the time of the probate should be excluded as incompetent.

But in the instant case contestants were not served with notice of the probate, and for that reason had no opportunity to be present at the time of the original probate and present their objection to the will. The law is, all parties have a right to be heard in cases in which they are interested, and before any court can acquire jurisdiction to hear and determine any contested matter, the adverse parties must have notice of the contemplated proceeding in some way fixed by statute, and in the absence of notice there is no jurisdiction, and hence no binding judgment can be rendered. Under such conditions, if the contestant had made a special appearance for the purpose only of attacking the decree of the county court admitting the will to probate, then the court would have been bound to vacate his order probating the will and give the contestant a hearing in the original proceedings, but having voluntarily appeared and invoked the jurisdiction of the court upon the merits of the case and having elected to proceed under said section 6219, Rev. Laws 1910, this operated as a general appearance, and her right to attack the jurisdiction of the court was thereby waived; but we must hold that she did have the right to have the case heard and determined upon its merits by a trial *de novo,* and such a hearing was had in the county court, which

found against contestant, and again in the district court, which found in her favor.

The contest in the county court was instituted by Ella Tucker, the decision rendered thereon on the 1st day of April, 1909, and on the 1st day of May, 1909, Maria Prophet filed an appeal to the district court in conformity with sections 6503 and 6504, Rev. Laws 1910. It appears that the appeal is regular, and every requirement of the statute has been complied with. She sets out in her affidavit of appeal, among other things, that she is a niece of the decedent and interested in the estate; that no notice of the probate of the will was ever served upon her, and that she had no knowledge of the hearing of the contest of said will after probate, and was not present at or a party to such hearing. She was one of the heirs of the deceased, and the statute gave her the right to take the appeal in this manner.

This brings us to the merits of the controversy, viz., whether or not the deceased, Nancy Blackfeather, at the time of the execution of the will was competent to make a valid will, and whether or not she was under such duress and undue influence as to invalidate the said will. The evidence upon this question was extensive on each side. It appears that the said Nancy Blackfeather was a full-blood Shawnee Indian, about 84 years of age at the time of her death; that she died on the 8th day of January, 1909; that on the 2d day of January, 1909, she made the following will:

"I, Nancy Blackfeather, of Vinita, Oklahoma, being now of sound and disposing mind, do hereby make, publish and declare the following to be my last will and testament, hereby revoking and canceling all other or former wills by me at any time made:

"(1)    I direct the payment of all my just debts and funeral expenses.

"(2)    I hereby give, devise and bequeath to L. B. Campbell, in consideration of money furnished me by him and paid out by him for me at my instance and request and of the care and attention given by him to the management of my business affairs and in looking after my personal comfort, the following described land, situated in Craig county, Oklahoma, to wit, the N. W. ¼ of S. W. ¼ of section 29, township 24, and range 21, consisting of 40 acres, and being my homestead allotment.

"(3)    I hereby give, devise and bequeath to my stepdaughter, Eliza Bluejacket, all the rest, residue and remainder of my property, both real and personal.

"(4)    I hereby appoint and designate L. B. Campbell above named, of Vinita, Oklahoma, sole executor of this my last will and testament.

"In witness whereof, I, Nancy Blackfeather, have to this my last will and testament, consisting of one sheet of paper, subscribed my name this 2d day of January, 1909.                                    her

"NANCY X BLACKFEATHER."
                        mark

At the time of the death of deceased her nearest of kin and legal heirs were her nieces, the aforesaid Ella Tucker and Maria Prophet, and the children of some deceased nephews, she having no children of her own. The will was witnessed by one John Choteau, an interpreter, and A. M. Clinkscales, a physician who attended the deceased at the time the will was signed and was her family physician.

Upon the part of the contestants, Paul F. Mackey testified to having drawn the will at the request of the said

L. B. Campbell, who informed him of the desired terms of the will, and that he did not see the decedent.

Mrs. Maria Prophet, the defendant in error, testified that she was a niece of the deceased, and that she never had any notice of the probate of the will.

Ella Tucker testified that she was living in Vinita at the time of the death of her aunt, the decedent; that she received no notice of the probate of the will; that her relations with her aunt had always been friendly; that the decedent was a full-blood Shawnee Indian and could talk English but little; that she saw her aunt about a week before she died, and that she was then very low and weak.

Ada Parrish testified that the decedent was her great aunt; that she attended decedent just prior to her death, and that during her last illness she was delirious and did not recognize any one and failed to recognize her during the last week of her illness and was unconscious at the time she made the will, and that a day or so before that she failed to recognize her brother, although she had known him all her life; that there was no ill feeling between decedent and Mrs. Tucker and Mrs. Prophet, her nieces; that decedent was incompetent to make a will at the time she executed the will in controversy.

Alberta Tucker testified that she was with the decedent frequently just prior to her death, and that she was then very sick, but that she did not talk to her, and that for the last three days prior to her death she would not notice her.

Bud Tucker, for contestant, testified that the decedent was his great aunt and had known him all his life;

that he visited her on the 2d of January, 1909, between 10 and 11 o'clock a. m., and at that time she was unconscious and did not recognize him while he was there, and that she was not in any condition to transact business.

For plaintiff in error, Dr. Neer testified that the only time he had ever seen decedent was on the night of the 3d of January, 1909; that he called professionally to see decedent, and that she answered his questions relative to the location of her pain in a rational way, and that, while she was weak physically, his impression was that she was of sound mind, but he did not see her except for a short while; that she was a very old woman, and died four or five days thereafter.

Dr. Clinkscales next testified that decedent died on the 8th of January, 1909, and that he was her attending physician, and that the will in controversy was executed by decedent on the 2d day of January, 1909, in the presence of himself and Mr. Choteau, and that to the best of his knowledge she understood what she was doing and was of sound mind; that decedent never required an interpreter during his investigation as to her condition in prescribing to her in her illness; that Mr. Campbell read the instrument over to her and then Mr. Choteau interpreted it to her; that she was then very weak; that the instrument was already drawn when Mr. Campbell went to decedent's residence to have the same signed; that she signed the instrument by mark by touching the pen, and that after it was read to her in English by Mr. Campbell and in the Shawnee language by Mr. Choteau she said that was the way she wanted it.

John Choteau, for plaintiff in error, said that he was a Shawnee citizen, and that he was one of the witnesses to

the will, and that before decedent executed the same he read it and interpreted it to her and explained what it was; that decedent could not talk the English language very well, but understood almost every word that was said to her in English; that after he explained it to her she said "that it was just exactly the way she wanted it"; that her mind was all right, and that she talked as sensible as she ever did at the time she signed the will; that Mr. Campbell wrote her name, and then she made her mark, and that Dr. Clinkscales and he witnessed it.

L. B. Campbell, plaintiff in error, testified that he was one of the beneficiaries in the will, and that the decedent sent for him to come down to her residence, and she told him she wanted to have her will made and how she wanted it; that he then had a lawyer draw the will up in accordance with what she said; that he inquired of Dr. Clinkscales, her physician, when he would be at her residence, and that he went at the time the doctor said he would be there; that decedent also asked that he have John Choteau present, so he could interpret the words, as she might not understand some of the words in it; that he read it over to her very slowly in English, and then Mr. Choteau read it and interpreted it to her in Shawnee, and that during the reading, a number of times, she nodded her head, and at the close she said in English, "That's the way I wanted it; it suits me exactly; I want it that way"; that he wrote her name, and she made her mark by touching the pen.

Julia Isabel testified that she lived with decedent for two years just prior to her death and attended her during her last sickness; that she was sick about four weeks; that Mrs. Bluejacket also stayed with decedent during

her last sickness; that decedent had a good mind when she was sick, and her mind was good when she made the will, and she understood what she was doing, and knew everything all the time, and that in her opinion her mind was sound when the will was executed; that the decedent was 84 years old when she died; that Mrs. Bluejacket was a stepdaughter of decedent.

Mrs. Eliza Bluejacket testified that she was one of the beneficiaries of the will, and that she was one of the attendants during her last illness, and that decedent was her stepmother.

Mrs. J. M. Etter testified that she was acquainted with decedent during her lifetime and visited her during her last sickness, and Mrs. Bluejacket was caring for her; that in her judgment decedent, on the 2d day of January, 1909, the time the will in controversy was executed, was competent to make a will.

John Underwood had lived within a half block of decedent for two years, and visited her often, and visited her the last time four or five days before her death, and testified that she was as rational then as at any other time he had talked with her.

J. R. Campbell stated he was a brother to L. B. Campbell; that he had known decedent about 25 years; that he was at her residence twice just before her death, and on January 2, 1909, her mind was sound; that he had been calling at her house for the past 20 years.

There appears no evidence in this case that attacks the general competency of the decedent to make a will. Although she was 84 years of age, no effort was made to show that senile dementia had approached, or that she

had ever shown any symptoms of unsoundness of mind or eccentricities of any kind except at the very time the will was executed, but the evidence on both sides was singularly absent as to the general condition of her mind prior to the date of the execution of the will, and the entire testimony was directed to her mental and physical condition on or near the date the will was executed, and related to the proposition whether or not she was in such a mental condition at that time as to understand the transaction, know its import, and intend to do the very thing that was done. The mere fact that she was an aged person in no way operates against the validity of the will made by her, but every presumption tends to uphold its validity. Underhill on Wills, sec. 114.

A presumption of sanity goes with everyone, and the burden of proving unsoundness of mind in a will contest rests on the contestant. *In re MacCrelish's Estate*, 167 Cal. 711, 141 Pac. 257, L. R. A. 1915A, 443. It is true that the contestant appears here with the advantage of having a verdict of the jury and finding of the court on every point in her favor, and this fact should and does have great weight here, but it is not controlling, for this is a chancery action and this court should here consider the evidence and decide for itself if the verdict and findings of the trial court are warranted by the evidence.

While the evidence shows that decedent was very old and feeble at the time she executed the will, yet that alone proves nothing. *In re Clark's Estate* (Cal.) 149 Pac. 828. The infirmity of old age does not within itself establish the lack of testamentary capacity. While it is proven in this case that the decedent was a very sick woman at the time she executed the will, and in fact died

within four or five days thereafter, yet the evidence introduced upon the part of the contestant is lacking in that force which should exist before a will is overthrown. Only three parties testified as to her incapacity, and two of these witnesses were children of one of the contestants and the other presumably a daughter-in-law. None but relatives gave testimony in their behalf, while there were a large number of witnesses who testified for plaintiff in error as to the soundness of decedent's mind at the time she executed the will; among these witnesses being two physicians, one of whom was her attending physician, and neither of whom, as far as the record shows, had any interest in the results of the trial. Another witness, whose testimony was in favor of the validity of the will, was a woman who had lived with decedent two years, and other apparently disinterested neighbors testified that her mind was sound when she executed the will. While the burden of proof was upon the contestants, yet it appears to us that the contestee has not only met the attack, but has gone further and proven almost conclusively that the decedent was of sound and disposing mind and memory at the time she executed the will and was fully conscious of what she was doing, and that the terms of the will expressed her own desire in the disposition of her property. *In re Hanson's Estate* (Wash.) 151 Pac. 264; *Wisner v. Chandler*, 95 Kan. 36, 147 Pac. 849; *In re Silva's Estate* (Cal.) 145 Pac. 1015.

The only thing that can concern courts and juries in cases like the one at bar is whether or not there was testamentary capacity, and a will cannot be set aside because juries or courts called upon to review the disposition of property made by the testator may feel that such disposition was unreasonable, harsh, or unjust. *Dreis-*

*bach v. Spring,* 93 Kan. 240, 144 Pac. 195. The testator, being of sound and disposing mind and memory, has a right to dispose of his property as his caprice or whim dictates, and courts and juries have no right to deny him that privilege if he possesses the proper mental requisite at the time he executes the will. But in this case we are unable to find any injustice even in the terms of the will, nor does it appear to us as an unnatural will, and we fail to find therein any evidence of a desire to punish any one by reason of a real or fancied grievance in failing to make them a devisee in the will, but the will does appear to us as emanating from a sound, just, and honorable mind. It appears that the said L. B. Campbell had purchased 40 acres of land from decedent, and paid her for the same in cash. We can readily understand how a fair-minded person under these conditions would naturally desire to perfect a title in this way where they had already received pay for the same.

As to the other devisee, Eliza Bluejacket, the equities with her are even stronger. The evidence shows that the decedent was an aged Indian woman without children, and that Mrs. Bluejacket was a stepdaughter, who had lived with her for a long time, waited upon her, and was her friend and companion in her declining days, and it does not appear that her nieces, her legal heirs, had ever paid her any special attention, they having family ties of their own, or that there had ever been any special attachment between them and decedent, and it appears to us proper and right, if decedent so desired, that the remainder of her property, after validating the above-named deed in this manner, should be bestowed upon Eliza Bluejacket in preference to her nieces.

There was no evidence in the case tending to show that any undue influence was exercised over decedent at the time she made the will. We believe the evidence, equity, and the law is with the executor, L. B. Campbell, in this case, and for these reasons the judgment should be reversed and remanded, with instructions to the trial court to enter judgment in favor of said executor, upholding the validity of the will.

By the Court: It is so ordered.