No. 42,867

In the Matter of the Estate of Sarah G. Foster, Deceased. MIRIAM F. BALL, *Appellant*, v. MARVIN E. THOMPSON, Guardian *ad litem* for SANDRA BALL, CANDACE BALL and MARJORIE STAGGS, nee MC-CULLOUGH, *Appellees* and *Cross-appellants*, H. C. McCONNELL, ELSIE BENSO KILLIAN, and JOHN C. WOELK, JR., as Executors and Trustees, *Appellees*.

(876 P. 2d 784)

Opinion filed December 8, 1962.

*Philip H. Lewis,* of Topeka, and *Thomas C. Boone,* of Hays, argued the cause, and *Melvin C. Poland, O. B. Eidson* and *James W. Porter,* all of Topeka, were with them on the briefs for the appellant.

*John C. Woelk, Jr.,* of Russell, argued the cause, and *Glenn V. Banker,* of Russell, was with him on the briefs for the appellee executors.

*Marvin E. Thompson,* of Russell, argued the cause, and was on the briefs *pro se* as guardian *ad litem* and for Marjorie Staggs, appellees and cross-appellants.

The opinion of the court was delivered by

JACKSON, J.: This is an appeal in a case to construe the will of Sarah G. Foster after the estate had been administered and was ready for closing. Because of the importance of this case, it was set down for reargument at the November session of the court.

The three executors, who are also named as trustees in a trust created by the will, filed a motion asking that the will be construed.

This motion was seconded by a motion of Miriam F. Ball—only child of the testatrix—who asked that the will be construed and also suggested that the will was invalid because it violated the rule against perpetuities. Mrs. Ball also filed a motion to transfer the within motions to the district court and this motion was allowed.

The district court after a careful hearing held that the will violated the rule against perpetuities, the rule against unlawful restraint on alienation, and the rule against unlawful accumulations.

The testatrix Sarah G. Foster had created a trust which included practically her entire estate, which is of considerable worth, and provided that Miriam F. Ball would receive an income of fourteen-twentieths (14/20) of the income for life and six-twentieths (6/20) of the income to be reinvested in the trust property or new property and that the trust should not be distributed until the time the "youngest child of the body, and not by adoption, of my ·daughter, Miriam F. Ball, reaches the age of twenty-three (23) years, or at the death of my said daughter, Miriam F. Ball, whichever event occurs the later, in the following manner and in the following shares, to wit:" The gift was to the children of the body of the daughter Miriam, and to any issue of predeceased children *per stirpes.*

The trial court held that he would simply strike out all provisions requiring that the grandchildren be twenty-three years of age and leave the provision providing that the distribution of the trust would be upon the death of Miriam.

The appellant Miriam F. Ball has appealed claiming that the will, being invalid as to the trust, cannot be made over and that the estate should descend to her as the only heir at law by intestacy.

As will appear, one of the granddaughters Marjorie McCullough Staggs was given the bank stock in the Gorham State Bank and it is agreed by the parties that this gift is entirely valid and is not challenged in this action.

The guardian *ad litem* attempts to show that the interest of the testatrix's grandchildren is vested. A proposition to which we cannot agree. In the case of *Beverlin v. First National Bank,* 151 Kan. 307, 98 P. 2d 200, Mr. Justice Allen had a question of the vesting of an estate in connection with the rule against perpetuities. At page 310, he said:

"It could be argued, however, that each grandchild living at the death of the testator would acquire a vested interest at the age of twenty-five subject to open and let in others who attain that age. (See 51 Harvard Law Rev., p. 1329,

hereinafter noted.) But such interests are not vested within the meaning of 'vested' under the rule against perpetuities. As stated by Simes in his admirable work on Future Interest, section 499: 'A class gift is considered as a single gift. Hence it is all good or all bad under the rule. *We may therefore lay down the rule that a class gift is not regarded as vested, for the purpose of the rule against perpetuities, as long as the maximum membership of the class is not ascertained.*' The gift to the grandchildren is therefore contingent, although there was a grandchild alive at the death of the testator." (Emphasis added.)

The guardian approves of the manner in which the trial court settled the controversy if the trust was, in fact, invalid as written. Lastly, and perhaps only acting as guardian *ad litem* to amply represent the minor children, the guardian cross appeals as to the trial court's position that the Sixth cause of the will, the *in terrorem* clause, should not be held to bar Miriam F. Ball's interest in the estate.

It would seem pertinent to dispose of the cross appeal in short order. We adopt the rule of the Restatement of Property, section 429, which holds that a bona fide belief in the invalidity of the will and with probable cause prevents the application of an *in terrorem* clause as to a beneficiary under the will. As set out in the Restatement, a beneficiary who attacks a will upon rules based upon public policy is merely serving the public.

Furthermore, Mrs. Ball was not only acting in good faith but was successful in her contention. Cross appellant concedes in such a case there should be no bar.

Before turning to any other questions, we shall set out sections L and M of Paragraph Fifth of the will. It will be seen that this is the distribution section where mention is made of the grandchildren for the first and only time.

"L. The trustees shall distribute the corpus of the Trust at the following times to the following persons in the following manner, to wit:

"1. To my granddaughter, Marjorie McCullough, one-half (½) of the capital stock of The Gorham State Bank of Gorham, Kansas, in the hands of the trustees at the time the said Marjorie McCullough reaches the age of twenty-five (25) years, as her property absolutely.

"2. To my granddaughter, Marjorie McCullough, the balance of the capital stock of the Gorham State Bank of Gorham, Kansas, in the hands of the trustees at the time the said Marjorie McCullough reaches the age of thirty (30) years, as her property absolutely.

"3. Subject to the foregoing provisions for distribution, all the rest, residue and remainder of the Trust Estate shall be distributed at the time the young-

est child of the body, and not by adoption, of my daughter, Miriam F. Ball, reaches the age of twenty-three (23) years, or at the death of my said daughter, Miriam F. Ball, whichever event occurs the later, in the following manner and in the following shares, to wit:

"a. To the children of the body, and not by adoption, of my said daughter, equally share and share alike.

"b. In the event any of the children of the body, and not by adoption, of my said daughter, Miriam F. Ball, die before any distribution date of said Trust, his or her share shall descend and be distributed to his or her children, and if no children, then to the surviving children of the body of my said daughter, Miriam F. Ball, equally share and share alike.

"M. In the event any of the trustees herein named shall predecease me or shall die before the termination of this Trust, or shall fail to qualify for their trusteeship or become disqualified to act as such trustee, I direct that his or her successor be selected from nominations made for the successor by the surviving trustees, keeping in mind to select a successor that has similar qualification to the trustee deceased or disqualified, excepting that the surviving trustees may nominate any of the beneficiaries of the Trust as successor trustee, but such selection shall not be construed as a termination of the Trust."

There seems to be little doubt that the above provisions violate the rule against perpetuities. The "Rule Against Perpetuities" requires that property must vest within a life or lives in being and twenty-one years. See *Keeler v. Lauer*, 73 Kan. 388, 393, 85 Pac. 541; Gray, *Perpetuities*, 4th ed., sec. 201.

The mere vesting of the legal title in trustees does not satisfy the rule. See *Beverlin v. First National Bank*, 151 Kan. 307, 311, 98 P. 2d 200, and *McEwen v. Enoch*, 167 Kan. 119, 122, 204 P. 2d 736.

Moreover, where there is a possibility that vesting may occur beyond the time required in the rule then the limitation is invalid. (*Beverlin v. First National Bank*, supra; Gray, *Perpetuities*, 4th ed., sec. 214.)

Since the possibility exists that Miriam F. Ball might have another child and then die before that child reached two years of age, the rule against perpetuities is violated.

The other rules which the trial court found to be violated, namely, Illegal Restraint on Alienation and Unlawful Accumulation of Income, are in a sense akin to the Rule Against Perpetuities. All of these rules rely on the common law rule of lives in being and twenty-one years and perhaps the period of gestation as the measure of time. For authorities on unlawful restraint against alienation, see: Gray *Perpetuities*, 4th ed., sections 268 *et seq.;* Restatement of Property, 1944 Rev. section 404, *et seq.;* 70 C. J. S. *Perpetuities*, sec-

tion 2 (b); 41 Am. Jur. *Perpetuities and Restraints on Alienation,* section 85.

We now note that the Fifth section of the will provides:

"E. It is expressly ordered and directed that said trustees shall not have the power to sell any real estate situated within the State of Kansas, excepting town lots, which may be sold by the trustees without court approval or intervention if they deem it to the best advantage of the Trust Estate."

Thus the trustees must not sell some thirty-four quarter sections of Kansas farm land during the stated period. It must then be seen that some 6,000 acres of Kansas farm land were to be held without power of alienation for more than lives in being and twenty-one years.

Paragraph Fifth D in conjunction with Paragraph Fifth I directs the trustees to invest 6/20ths of the surplus income from the trust in such manner that said income is added to and becomes a permanent part of the corpus of the trust in violation of the common law Rule Against Accumulations. See Restatement of Property, 1944 Rev. section 439 and section 441; 70 C. J. S. *Perpetuities,* section 32; Bogert, *Trusts and Trustees,* Vol. 1a, section 215, p. 374 *et seq.*

Thus, whether we view the permissible period as one governed by the Rule Against Perpetuities or by a separate Rule Against Accumulations, it is clear that a direction to accumulate for a period which may extend beyond lives in being and twenty-one years is invalid.

We believe that the trial court did not err in holding that the will as drawn violated all three common law rules.

We come now to the real question in this appeal. As noted, *supra,* the trust was not to be distributed under Section Fifth L. 3 until "at the time the youngest child of the body, and not by adoption of my daughter, Miriam F. Ball, reaches the age of twenty-three (23) years, or at the death of my said daughter, Miriam F. Ball, whichever event occurs the later."

The trial court considered the intent of the testatrix to die testate and, possibly influenced by some of our cases to be noted hereinafter, simply excised the part of the above provision which provided the grandchildren must be twenty-three years old, making the trust now determinable at the death of Miriam F. Ball. Thus the will no longer violates the rule against perpetuities nor the other allied rules and the intent of the testatrix is carried out.

A majority of this court is convinced that the trial court came to

the correct decision, although the reasoning might differ to some degree. The court has not overlooked the argument that the trial court simply wrote a different will for the testatrix. However, the court feels that our cases hold that an invalid provision under the rule against perpetuities may be stricken out and the valid part of the will enforced. Attention is directed to *Blake-Curtis v. Blake,* 149 Kan. 512, 89 P. 2d 15, where in the third paragraph of the syllabus it was said:

"Where one provision of a will is invalid because it violates the rule against perpetuities, and the testamentary scheme of the testators can be determined and carried out regardless of the void provision, that provision will be stricken out and the testamentary plan given effect."

In *Beverlin v. First National Bank,* 151 Kan. 307, 98 P. 2d 200, the syllabus reads:

"A testator devised and bequeathed to each of his two daughters real and personal property to be held in trust until such time as each daughter should attain the age of forty years, at which time the property should be turned over to them; it was further provided that in the event of the death of either daughter without legitimate child or children of their body, the share of such daughter would go to the other living daughter, but in case of the death of either daughter leaving a legitimate child of her body, the share of such daughter should be held in trust until the period when such daughter would have attained the age of forty years, provided such child or children had arrived at the age of twenty-five years, if not, to be held in trust until such time as the age of twenty-five is reached. *Held,* the gift to the grandchildren of the testator upon attaining the age of twenty-five years violates the rule against perpetuities and is void; that if either daughter should die under the age of forty without legitimate child or children of her body, her share in the estate would go to the living daughter; that should either or both daughters attain the age of forty years the trust would terminate and the share of either or both daughters attaining such age would become indefeasibly vested."

In *McEwen v. Enoch,* 167 Kan. 119, 204 P. 2d 736, it was said:

". . . The trust having failed, what happens to the corpus of the purported trust? Clearly it was the intention of the settlor, C. M. Beachy, to give to his two grandchildren Ellen and Owen McEwen, all of his property. That is the import of the entire trust agreement. Furthermore, that intent was carried out in his will which he executed some eighteen months prior to the trust agreement, and under which the two defendants are the sole beneficiaries since their mother predeceased the testator in death.

"It is well established by decisions of this court, and by authorities generally, that where it is possible to determine the intention of the testator (or the settlor) that intention must control (*Blake-Curtis v. Blake,* 149 Kan. 512, 524, 89 P. 2d 15, and cases cited therein). In the instant case it seems equally clear that the intent of C. M. Beachy, the settlor, was to make a gift of his

property to his grandchildren Owen and Ellen McEwen. In his efforts to delay the time of their possession and enjoyment of the property failed because of legal difficulties, they should nevertheless become the recipients of his bounty as he obviously intended." (p. 126.)

In the earlier case of *Dreisbach v. Spring*, 93 Kan. 240, 144 Pac. 195, when a portion of a will was held to violate the rule against perpetuities, it was stricken out without destroying the whole will of the testator.

Again in the Beverlin case, *supra*, the court dealt with how much of the will was destroyed by the rule against perpetuities. At page 312 the court said:

"2. Does the failure of the intended trust for the grandchildren destroy the prior gift to the children?

"In Gray, Perpetuities, § 247, the general rule is stated thus:

'§ 247. (1) *Effect on Prior Limitations.* If future interests created by any instrument are avoided by the rule against perpetuities, the prior interests become what they would have been had the limitation of the future estates been omitted from the instrument. Thus, if an estate is given to A for life, remainder to his children and their heirs, but, if the children all die under twenty-five, then to B and his heirs, the limitation to B is too remote, and the children of A take an indefeasible fee simple. The cases illustrating this are innumerable. So when there is a devise on a remote condition, and no prior devise, the land descends to the heir who has an indefeasible fee.'

"The question was before this court in the recent case of *Blake-Curtis v. Blake*, 149 Kan. 512, 89 P. 2d 15. We there held, as stated in paragraph three of the syllabus:

'Where one provision of a will is invalid because it violates the rule against perpetuities, and the testamentary scheme of the testators can be determined and carried out regardless of the void provision, that provision will be stricken out and the testamentary plan given effect.'

"See, also, *Dreisbach v. Spring*, 93 Kan. 240, 144 Pac. 195.

"The general rule is that where an attempted ultimate executory interest fails in its inception because of the rule against perpetuities, the prior interest becomes indefeasible." (Citing cases.)

We are quite well aware that under paragraph Fifth L. 3 of the will, it is provided that distribution shall take place at the time "the youngest child . . . of my daughter, Miriam F. Ball, reaches the age of twenty-three . . . or at the death of my said daughter, Miriam F. Ball, whichever event occurs the later. . . .

But whatever else is true, it is also plain that the will can validly provide that distribution may be postponed until after the death of Miriam—a life in being. It comes quite readily to mind that the ideas of the testatrix can probably be carried out if the invalid pro-

vision as to the age of twenty-three years—as it relates to the grandchildren—be stricken and the trust made to terminate at the time of the death of the daughter Miriam.

The majority of the court is of the opinion that there is ample authority in our cases and in citations made therein to hold that the trust will terminate on the death of Miriam F. Ball. Thus the court agrees with the holding of the eminent trial judge and his decision is affirmed. It is so ordered.

ROBB, J. (concurring in part and dissenting in part): I concur in the affirmance of the judgment of the trial court but find myself unable to agree with that part of the majority opinion regarding the common law theory of accumulations which is known as the English Thellusson Act. As we stated in *In re Estate of Yetter*, 183 Kan. 340, 348, 328 P. 2d 738, our legislature has not passed any statute governing the accumulation of surpluses in trusts or estates and for that reason the provisions respecting the six-twentieths interest under the testamentary trust are not void. I think this court should be meticulous in its references to accumulation of surpluses in trusts or estates in order not to confuse our conclusions and holding in the Yetter case. With respect to the fourteen-twentieths interest, it is my opinion the trust created by the will of Sarah G. Foster providing for a life estate for Miriam F. Ball is valid but the provision that at her death the remainder over went to the children of her body is void because it clearly violates the rule against perpetuities.

Obviously, of course, the express purpose and intention of the testatrix was to die testate or, stated in another way, her intention was *not to die intestate*, but still the provisions of her will had to be according to law. By those provisions she died intestate so far as any gift over to the remaindermen, children of the body of Miriam F. Ball, are concerned. Therefore, at the death of Miriam F. Ball the fourteen-twentieths interest and the six-twentieths interest should both revert back to the estate of the testatrix and pass under the laws of intestacy.

I have no desire to extend this opinion by repeating the appropriate law, as I understand it to be, but I do wish to call attention to 2 Bartlett's Kansas Probate Law and Practice, rev. ed., Rule Against Perpetuities, § 583, on Application of the Rule, pp. 114-119, and § 585, Operation and Effect of the Rule, p. 120, where it was said:

"The remainder which offends the rule reverts to the donor or becomes a

part of the residue of his estate. The provision of the will being void, the estate goes as if such provision had not been made."

The author of the above work discussed the cases in Kansas including the McEwen case cited in the majority opinion wherein there was no intervening legal or equitable estate, but only a trust for the testator's grandchildren for a period which violated the rule against perpetuities, and at the end of that time the same grandchildren were to take the fee simple title. In our present case, however, there is an active trust with the legal title in the trustees and the beneficial title in Miriam F. Ball for her lifetime, then a continuing trust with the legal title remaining in the trustees and the equitable title in the children of the body of Miriam until those children reach the age of twenty-three years, or Miriam dies, whichever is the later. Thus this trust must fail as to the children of the body of Miriam because of violation of the rule against perpetuities, and since it does not go to those children in fee simple title until the above provision is terminated, it cannot go through a residuary clause except by reverting back into the void trust. If we were to accelerate the fee simple title as was done in the McEwen case, the children of the body of Miriam would take at the death of the testatrix and thus the life estate of Miriam, which was equitable, would be cut out and the intention of the testatrix to give Miriam only the proceeds from the trust during her lifetime would be defeated.

JACKSON, J. (dissenting): Under the unusual rule of this court followed by no other court in the country, it fell to me to write the foregoing opinion with which I disagree. I feel that the court had no jurisdiction to make a different will for the testatrix simply because she had the intent to die testate. I would have held that the will was valid as to the bequest of the bank stock to Marjorie McCullough Staggs and that the balance of the trust would go by intestate succession to Miriam F. Ball, the sole heir at law of the testatrix.

In the case of *Hoover v. Roberts,* 144 Kan. 58, 58 P. 2d 83, the syllabus reads as follows:

"1. The excision of the word "intestate" from a will and the substitution of the phrase "without issue" consitute neither interpretation nor construction of the terms of the will, but reformation, over which latter subject matter a district court has no jurisdiction.

"2. A judgment, void for want of jurisdiction, may be collaterally attacked at any time."

The only question I have in the case is whether Miriam F. Ball should retain the life estate. The trust was to continue until the youngest child of Miriam F. Ball reached the age of twenty-three years or until Miriam's death whichever event occurs the later; and if the life estate is preserved then the trust would be enforced and since Miriam F. Ball will probably live much longer than until her daughters have reached twenty-three years of age, the result would be that the will would be carried out in its entirety. And yet we hold the will to be invalid.

I would say that Mrs. Ball should inherit the whole estate at the present time as the sole heir of her mother and the will is void except as to the bank stock mentioned above.

FATZER, J. (dissenting): I concur with what is said in Mr. Justice Jackson's dissenting opinion, but I wish to add the following: The decedent's will was executed five months before her death, and the status of beneficiaries and potential beneficiaries was substantially the same on both the execution and operative dates of the will. The appellant, Miriam F. Ball, is the decedent's sole heir at law. She was 38 years of age and had three living children when the will was executed and when the decedent died. Except for the specific bequest of the bank stock to Marjorie Staggs, the decedent's will does not specifically name any other beneficiary except her daughter, Miriam F. Ball. While the will provides for a class of beneficiaries —the living children of the body of Miriam F. Ball and the children of deceased children of the body of Miriam F. Ball—it does not express any disposition to benefit any specific individuals except the daughter, Miriam F. Ball, and the granddaughter, Marjorie Staggs, as to the bank stock.

The decedent's will is very specific. The decedent clearly indicated her desire to protect and perpetuate the stock of the Gorham State Bank and her extensive farming operation. As to the bank stock, it was left in trust to Marjorie Staggs, distributable one-half at 25 years of age and the remainder at 30 years of age. The parties concede that this provision of the will vested title to the bank stock in Marjorie Staggs within the period prescribed by the rule against perpetuities and is not the subject of controversy in this litigation. All the other real and personal property of the decedent was devised to trustees, in trust, with the trustees to make monthly distributions to Miriam F. Ball during her lifetime of fourteen-twentieths of the

annual net income of the trust estate. Upon the death of Miriam, that distribution was to be made during any remaining trust term to the children of the body of Miriam. The trust was to continue until the youngest child of the body of Miriam had reached the "age of twenty-three (23) years or at the death of (Miriam), whichever event occurs the later." Upon the happening of those two prerequisites, title to the trust was to be vested in and distributed to the class of beneficiaries consisting of the then living children of the body of Miriam F. Ball, plus any children of deceased children of the body of Miriam F. Ball. Adopted children were specifically excluded from the taking class.

The parties, counsel, the district court, and this court are all agreed *that the remainder to this class of beneficiaries above designated was contingent and that the trust was in violation of the rule against perpetuities that requires that property must vest within a life or lives in being and 21 years thereafter.*

The court has now come full circle. It recognizes in one breath that the common-law rule against perpetuities, in force in this state since statehood *(Keeler v. Lauer,* 73 Kan. 388, 85 Pac. 541; *Klingman v. Gilbert,* 90 Kan. 545, 135 Pac. 682; *Lasnier v. Martin,* 102 Kan. 551, 171 Pac. 645; *Grossenbacher v. Spring,* 108 Kan. 397, 195 Pac. 884; *Kirkpatrick v. Kirkpatrick,* 112 Kan. 314, 211 Pac. 146; *Beverlin v. First National Bank,* 151 Kan. 307, 98 P. 2d 200), is still in force, and that paragraph V of the decedent's will violates the rule and is void in its entirety, but in the next breath it holds that it will reform the will by "excising" the infringing portions of paragraph V and declare the will as it should have been executed to permit the decedent to have left a valid will. Such a conclusion has no precedent in this jurisdiction or elsewhere to sustain it; it is wholly unwarranted, and places the court in the business of rewriting invalid wills of testators to establish what it deems to be the testator's plan or interest.

It is axiomatic that courts cannot make new wills for testators who have failed to make valid wills for themselves. If the court feels that the rule against perpetuities is no longer fitted to the wants and needs of the people of the state, it should declare it to be inoperative so that the Bench and Bar may be properly guided in the future when drawing wills. It is not warranted in recognizing the rule as applicable to a decedent's will, and then avoid its application by the device of excising the invalid portions of a will which violate it.

I would reverse the judgment.