No. 40,958

SADIE B. SIMMONS, Also Known As Sadie Y. Boarman; ROBERT GRAHAM YETTER, KEITH BARTLETT YETTER, WARREN HILL YETTER, and JUDD C. BENSON, *Appellants*, v. CLARENCE REYNOLDS, Trustee; THE OGALLAH CHRISTIAN CHURCH, a Corporation; CLARENCE REYNOLDS, J. L. POWERS, HORACE WYNN, S. L. POWERS, GEORGE GLASS, SR., LEO MATTKE, CARROLL WYNN, and THE TEXAS COMPANY, a Corporation, *Appellees*.

In the Matter of the Estate of Elizabeth Yetter, Deceased. (SADIE B. SIMMONS, et al., *Appellants*, v. CLARENCE REYNOLDS, Trustee, et al., *Appellees*.)

(328 P. 2d 738)

Opinion filed July 7, 1958.

*William Wagner*, of WaKeeney, and *Ralph W. Oman*, of Topeka, argued the cause, and *Ernest J. Deines*, of WaKeeney, and *A. Harry Crane*, *Ward D. Martin*, *Arthur L. Claussen*, *Harvey D. Ashworth*, *Robert L. Webb*, *Philip E. Buzick*, *Robert A. McClure*, and *James D. Waugh*, all of Topeka, were with them on the briefs for the appellants.

*Jerry E. Driscoll*, of Russell, argued the cause, and *Richard M. Driscoll*, of Russell, and *Ralph H. Clark*, of WaKeeney, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: This consolidated appeal is from every part and portion of the ruling, decision, order and judgment of the court below, generally against plaintiffs, who have appealed, and is the second appearance of the controversy in this court. The former appeal (*Simmons v. Reynolds*, 179 Kan. 785, 298 P. 2d 345) was from the trial court's order overruling defendants' demurrers to plaintiffs' petitions, and the details in respect to the parties and the propriety of the actions need not be repeated here as they were sufficiently set out therein.

Two portions of the will of Elizabeth Yetter, deceased, dated

September 10, 1938, are sought to be construed in this declaratory judgment action. The following is the first portion:

"First. To the Christian Church, called by me the Christian Church of Ogallah, Kansas, to which church I am now a member, I give, devise and bequeath . . . [correct description of land devised: west half of the west half of 25-12-22, Trego county]. I make this gift to the said church to be kept and maintained as a perpetual memorial to my deceased daughter, Bernice Benson and my daughter Nora Tawney with whom I am living. This land shall not be sold, conveyed, mortgaged nor alienated. I appoint my daughter Nora Tawney as trustee to manage and take care of the income from said property so long as she may wish or until her death. She should advise with my sons Judd H. Yetter and Culver D. Yetter in the management of said trust. The income shall be paid first in the payment of the taxes assessed against said land, then in keeping up the improvements on said property, and the remainder shall be paid toward the salary of the minister of said church. Such net income shall not be used for any other purpose except the payment of the salary of the minister of said church. Should my daughter Norah Tawney resign from such trusteeship or upon her death her successor shall be appointed from the membership of said church and if my sons be living upon their or his recommendations but if neither son recommends then the trustee shall be selected by the members of said church and shall serve only while a member of said church and a resident of the Ogallah Community. . . ."

The second portion of the will under which plaintiffs claim is the residuary clause. It reads:

"Eighth. I hereby authorize and direct and empower my executrix hereinafter named to sell and convert into cash all the balance of my real estate not devised as especially bequeathed as soon after my death and the probating of this will as the same may be done to the best advantage, such sale not to be made in time or times of great depression, and after payment of the above legacies, I devise, give, and bequeath said moneys to the following persons, Sadie B. Simmons, my granddaughter, Robert Graham Yetter, Keith Bartlett Yetter, Warren Hill Yetter, my grandsons, and my great grandson now called James Randolph Simmons, share and share alike all of the moneys arising from the said sale after payment of the legacies to my son Judd H. Yetter and Maria E. Courtright. And that all the rest and residue of my estate not aforesaid provided for be paid to my said grandchildren after payment of my debts in equal shares."

The facts admitted by the pleadings, exhibits and stipulations of the parties are:

Elizabeth Yetter, a long-time Trego county resident and member of the unincorporated Christian Church of Ogallah in that county, died testate on November 21, 1938, owning the 160 acres of real estate above set out. The will was duly proved and admitted to probate by the Trego county probate court in which proceeding

the 160 acres of land were inventoried at the value of $2,730.00. Upon the petition of Norah Tawney, executrix of Elizabeth's will, the probate court on July 28, 1941, after due notice to all the present parties, entered its final settlement order, the salient parts of which, in brief, are:

"It is further shown to the court and the court finds that in the will of said Elizabeth Yetter the real estate devised in trust to the Christian Church of Ogallah is described as the W 1/2 of the NW 1/4 and the SW 1/4 of 25-12-22, Trego County . . . [but] that the trust set up for the benefit of said church should describe only the W 1/2 of W 1/2 of 25-12-22, Trego County, Kansas.

. . . . . . . . . . . . . .

"It is further shown to the court and the court finds that said executor has received income and made disbursements from the real estate specifically devised as follows:

"From the [160 acres] devised to Norah Tawney in trust for the Christian Church of Ogallah:

    "Receipts:      $546.29         Disbursements:     $372.36
    "Balance:       $173.93 .

. . . . . . . . . . . . .

"It Is Further Considered, Ordered and Adjudged by the court that the correct description of the real estate devised to Norah Tawney as Trustee for the Christian Church of Ogallah, Kansas, under and by the terms of the will of said Elizabeth Yetter, is the W 1/2 of W 1/2 of Section 25, Township 12, Range 12, Trego County, Kansas . . . that said [land] be assigned to said Norah Tawney as Trustee be and she is hereby directed to take possession of the same; that said executor pay to said Trustee the sum of $173.93, being the balance due on income from said trust property during the administration of said estate."

Upon the petition of Norah Tawney the probate court on August 29, 1941, issued an order which, in pertinent part, reads:

"It is thereupon shown to the court and the court finds that under and by virtue of the terms of the will of Elizabeth Yetter, deceased, Norah Tawney was devised (as) Trustee for the Christian Church of Ogallah, Kansas, the following described real estate lying and situated in Trego County, Kansas [describing it] to control and manage said property and to use the net income therefrom toward the payment of the salary due the minister of said church."

The probate court further ordered:

". . . that the appointment of said Norah Tawney as Trustee for said Christian Church of Ogallah, Kansas, under the will of Elizabeth Yetter, deceased, be and the same is hereby confirmed. . . ."

On October 13, 1951, oil was discovered on the 160 acres of land and on January 1, 1952, the first oil proceeds were paid.

Norah died on June 6, 1952, and her executor thereafter accounted for the income from the trust property of 160 acres. On July 7, 1952, the probate court found:

". . . it is imperative that a trustee should be appointed at an early date in order that the assets and the income of said trust property may be preserved and properly accounted for . . .,"

and it appointed Clarence Reynolds as trustee, with bond fixed at $20,000. His bond was obtained on July 25, 1952, and filed July 26, 1952, after letters of trusteeship had been issued to him on July 22, 1952. He is the present trustee and his bond has been increased to the sum of $40,000.

The church came into existence in 1888, was incorporated on May 19, 1950, and now operates as such with Reynolds as resident agent. All the real estate of the church was conveyed to the corporation but no mention was made of the 160 acres of land. In 1953 Jack Clough became the first resident minister. He was paid $300.00 a month plus the use of the improvements on the 160 acres of land. During her lifetime Elizabeth made donations toward the minister's salary, which averaged about $158.00 a year from 1936 to 1941. In 1938 there were 116 regular members of the church. In 1956 the number had increased to 160 with 98 inactive members living elsewhere and 62 active members living in Ogallah, an unincorporated village with a population of 125 inhabitants on December 5, 1956. The present minister, Reverend Wayne Parrish receives $85.00 a week. Reynolds, as trustee, with approval of the probate court has expended certain money for repair of the improvements on the 160 acres, for trustee fees, and for attorneys' fees in a tax proceeding before the U. S. director of revenue.

Elizabeth first leased the 160 acres for oil exploration for a ten year term on May 15, 1936, which lease has been extended and ratified by all parties concerned. There are now five wells—three of which are producing their allowables of twenty-five barrels daily. The other two are not making their allowables. The trustee for a time kept the farm income and the oil proceeds in separate accounts but he now keeps them in one account. He has an accumulated amount of $46,000 in his possession.

The named residuary legatees under the will assigned an undivided one-fifth interest in the 160 acres to Judd C. Benson on September 29, 1953. No appeals were taken from any of the orders of the probate court and no court proceedings were commenced for

any purpose regarding the trust estate until the institution of the proceedings now being considered in this appeal. An annual account has been filed in and approved by the probate court. Since Reynolds' trusteeship amounts have been entered in the annual accountings showing trustees' bond premiums of $90.00, trustees' fees, $2,265.00, unclassified items, $242.22, attorneys' fees, $2,346.00, and court costs, $303.61. These expenditures, together with an increasing annual amount spent for the preacher's salary, have been approved by the probate court.

The record in this case shows a tireless effort on the part of industrious counsel to furnish the court with all available authority on every point likely to be pertinent in the appeal and the court appreciates such consideration.

The first point of controversy is whether this is a collateral attack to contest a will so that the final settlement of the probate court was *res judicata* to its institution and maintenance. This question was sufficiently settled by our holding that the action was proper under G. S. 1949, 60-3129 in the former appeal (*Simmons v. Reynolds*, 179 Kan. 785, 298 P. 2d 345) and we adhere thereto without further discussion.

The duty of a probate court at the time it enters its decree of final settlement in a proceeding to probate a will is set out in *Sharpe v. Sharpe*, 164 Kan. 484, 190 P. 2d 344, as follows:

"Probate courts, in order to comply properly with G. S. 1947 Supp., 59-2249, should set forth in final decrees closing estates the nature and extent of the title which devisees acquire in real property in order that examiners of title can determine from the decrees whether the devisees may convey their interests without limitation." (Syl. ¶ 1.)

Thus when Norah, as executrix, filed her correct accounting, it had to be settled and allowed by the probate court. Thereupon that court had to determine the heirs, devisees, legatees, describe the property, and state the proportion or part thereof to which each was entitled and such decree was binding as to all the estate of Elizabeth. (G. S. 1949, 59-2249.)

In addition to that involved herein, other real property was devised under Elizabeth's will and at the time of final settlement thereof, the probate court had authority and the duty to interpret or construe the will and to determine who was to receive each part and parcel of such real property. (*In re Estate of Weidman*, 181 Kan. 718, 725, 314 P. 2d 327.) The time of the final settlement is

the proper time for such determination to be made by the probate court (*In re Estate of Burling,* 179 Kan. 687, 693, 298 P. 2d 290) and since in our present case the time for appeal had elapsed and no appropriate appeal had been taken, the matters that had been finally determined by the probate court were conclusive and binding on the parties. (*In re Estate of Rothrock,* 173 Kan. 717, 722, 252 P. 2d 598.) There is merit in having finality of judicial decisions so that subsequent purchasers of real property can rely on the strength of a probate court's decree of final settlement. (*Bindley v. Mitchell,* 170 Kan. 653, 657, 228 P. 2d 689.) To hold otherwise would require such purchasers to deal with executors, administrators or trustees at their peril. (*In re Estate of Johnson,* 180 Kan. 740, 748, 308 P. 2d 100.)

From the record before us it is conclusively shown there is a sharp conflict between the parties as to what their present rights are in their particular capacities and positions under the trust created by the provisions of Elizabeth's will. It is evident that at the time of the commencement of this action there had been definite changes in conditions and circumstances since the probate court's decree of final settlement which in reality was not, or was it intended to be, a complete final determination and settlement of all final rights of these parties under the trust.

In a preliminary consideration of this testamentary trust, it must be remembered that this court has, in its many decisions, consistently adhered to general rules of construction as they appear in the revised edition of Bartlett's Kansas Probate Law and Practice. Two of them are:

"The rules of construction applied to wills . . . recognize that each will must be construed by its own terms and the circumstances under which it was executed . . .,"

and,

"The cardinal rule in the construction of wills to which all other rules are subordinate is that the intention of the testator must be ascertained, if possible, and must be given effect if it is not contrary to an established rule of positive law or in violation of public policy. . . ." (1 Bartlett's Kansas Probate Law and Practice, rev. ed., § 441, p. 517; § 443, p. 520.)

On occasion Mr. Bartlett in his text has quoted appropriate rules stated in the opinions of this court, such as the following:

" 'It is elementary that the primary, the supreme, test in the construction of a will is the intention of the testator. It also is elementary that such inten-

tion must be ascertained not from any single or isolated provision but from all provisions contained within the four corners of the instrument and from circumstances surrounding its execution if they are needed to clarify the testator's true purpose and intent.'" (1 Bartlett's Kansas Probate Law and Practice, rev. ed., § 444, p. 523; *Shannep v. Strong*, 160 Kan. 206, 160 P. 2d 683.)

Elizabeth's dominant scheme was to create a charitable trust for the advancement of religion by applying the net proceeds from the rents and profits derived from the real estate, after payment of taxes and upkeep, *toward* the payment of the salary of the minister of the church. (Restatement, Trusts, Volume II, § 371, p. 1149.) Irrespective of what *motive* Elizabeth may have had for creating the trust, since the *purpose*, as established by the clear and unambiguous terms of her will and so decreed by the probate court in its decree of final settlement, appeared to be to create a charitable trust to serve and promote religion (Restatement, Trusts, Volume II, § 368 d., p. 1142), then this court is committed by its rule of long standing to carry out this charitable religious trust because our courts will look with favor upon all attempted charitable donations, and will endeavor to carry them into effect, if it can be done consistently with the rules of law. (*Barnhart v. Bowers*, 143 Kan. 866, 869, 57 P. 2d 60.) See, also, 2 Bogert on Trusts, § 350, p. 514; *In re Estate of Porter*, 164 Kan. 92, Syl. ¶ 7, 187 P. 2d 520. Stated in plain terms, it is immaterial whether the net proceeds from the farm land, to be applied *toward* the payment of the minister's salary, are in small or in substantial amounts as those proceeds must be applied to the purpose stated and determined.

From all that has been narrated herein it is clear that at Elizabeth's death Norah was in being, the church was in existence, and it had a minister. Thus the legal title then vested in Norah and the equitable title vested in the church to carry out the trust. After the probate court put this religious charitable trust into operation by so vesting those titles and the time for appeal had expired, such vesting could not be attacked. It follows that when the present trustee was appointed, qualified and began to act, he replaced Norah in all respects, both factually and legally. The trust is active and the probate court continues to exercise jurisdiction over the trustee in his management thereof. In trust matters a court retains jurisdiction to control the trustees in their management thereof and the probate code empowered the probate courts of Kansas with

equity jurisdiction for that purpose. (*In re Estate of Woods*, 181 Kan. 271, 311 P. 2d 359.)

In the Woods case a general and public charitable trust was created by the clear, unambiguous language in the will of the testator and for that reason we there disregarded the application of the doctrine of *cy pres*. Here we have a particular religious charitable trust with a narrow intent and purpose created by the plain, clear, unambiguous and concise language in Elizabeth's will and the doctrine of *cy pres* is not applicable.

Subsequent to the decisions in the Simmons and Woods' appeals this court has handed down the opinion in *Coolbaugh, Trustee v. Gage*, 182 Kan. 145, 319 P. 2d 146, where, as a part of a property settlement in a divorce action, a trust was amicably created in writing by parents for the support of their four minor children. We there held the trustee had the legal capacity to sue, in an action independent from the divorce proceeding, to determine the rights of an assignee of the father and his present wife. That opinion shows the necessity of the aforesaid rule that courts must have and exercise jurisdiction over trusts to assure interested parties that their rights and property will be protected when involved in such trusts. While the facts in the two cases are not congruent, the general legal rules discussed in the Coolbaugh case (p. 150) are applicable here.

The surplus of $46,000 now reposing in the possession of the trustee gives rise to the vital question of this appeal. Plaintiffs claim they are entitled thereto under the residuary clause while the defendants claim plaintiffs are not so entitled if the devise to the church is not wholly void. We have carefully considered the unambiguous provisions of paragraph 8 of the will, previously set out herein, and while we are not passing judgment on any of these matters, it appears that Elizabeth expressed no limitation as to time or amount and no provision was made for reverter or gift over. The present surplus could not have been anticipated by Elizabeth. (*State, ex rel., v. Board of Regents*, 176 Kan. 179, 189, 269 P. 2d 425.) Our state legislature has not as yet passed any statute governing an exigency created by the accumulation of such a surplus. Some of our sister states have passed legislation patterned after the English Thellusson Act and attention is directed to the annotation appearing in 71 A. L. R. 417, where a comprehensive discussion on such statutes is found.

No one can anticipate what accumulations or surplus will be added to the existing fund. There is no assurance that it will continue to pyramid and, on the other hand, there is no assurance that it will cease to be supplemented beyond the amount needed for the particular and narrow intent of this trust. The income from the land might fail entirely. We certainly cannot determine from a careful study of her will that Elizabeth intended to support and maintain this church entirely or to create any general charity. (*Shannep v. Strong,* 160 Kan. 206, 160 P. 2d 683.) She had a sizeable estate during her lifetime and she did not then support and maintain the church entirely so it cannot be concluded that she intended to do so after her death. In fact, the contrary is manifested by her disposal, through other channels, of the other portions of her estate. When these proceedings were begun the church was in existence and had a full-time salaried minister. The trust, therefore, continued active. It was not passive, dry, inoperative, fully executed, or terminated. (For a discussion thereof, see *In re Estate of Sheets,* 175 Kan. 741, 267 P. 2d 962.) Also, without determining the matter, it may be noted that upon the occurrence of any of the latter events, there is authority to support the proposition that the trustee could not retain the property but it should revert to Elizabeth's successors or residuary devisees. (2A Bogert on Trusts, § 418, p. 305; *Shannep v. Strong,* supra.)

Under the rules of construction above stated, however, we must consider Elizabeth's expressed intention in the first paragraph of her will that, "Such net income shall not be used for any other purpose except the payment of the salary of the minister of said church," and until her expressed purpose has terminated, there can be no justification for court interference with any surplus fund accumulated unless this court abrogates *stare decisis,* or our legislature enacts appropriate statutes for the purpose of controlling the accumulation of a surplus such as we have here.

Plaintiffs argue the trustee has exceeded his power and violated his trust but, as correctly stated by defendants, this will not terminate the trust but merely provide justification for the removal of the trustee and the appointment of a successor. (*Daughters of American Revolution v. Washburn College,* 160 Kan. 583, 164 P. 2d 128.) It is not necessary to discuss the fiduciary relationship of and the resulting duty owed by the trustee in the administration

of a trust. The trial court found the trust is being properly managed and on the record before us on this appeal we agree.

All questions raised have been considered and we have not overlooked any of the many casebook and text authorities submitted but those referred to herein are sufficient for the determination of the questions involved. The judgment of the trial court must be affirmed and it is so ordered.