No. 44,084

In the Matter of the Estate of D. N. Freeman, Deceased. MARGARET ELIZABETH PEROTTI and NANCY ANN HOWELL (formerly Nancy Ann Braile), *Appellees*, v. THE FIRST NATIONAL BANK OF TOPEKA, Executor, *Appellant*.

(404 P. 2d 222)

Opinion filed July 10, 1965.

*Terry L. Bullock,* of Topeka, argued the cause, and *R. L. Hamilton* and *Harry W. Gantenbein,* both of Beloit, *Robert L. Webb, Ralph W. Oman, Philip E. Buzick, William B. McElhenny, James D. Waugh, James L. Grimes, Jr.,* and *Donald J. Horttor,* all of Topeka, were with him on the briefs for the appellant.

*Wendell S. Holmes,* of Hutchinson, argued the cause, and *Geo. E. Teeple,* of Mankato, and *Thomas M. Howell,* of Kansas City, Missouri, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment in an action to construe a will which held a devise in trust void as in violation of the rule against perpetuities.

The facts material to the determination of the controversy are not in dispute.

D. N. Freeman died December 21, 1959, leaving a will which he had executed November 10, 1955.

Although it may burden this opinion an attempt to construe the instrument will be meaningless unless we present the verbatim language used by the testator. Only the portions of the will essential to the determination of the questions before us will be considered. The will provides insofar as material to the issues to be determined as follows:

#### FIRST ARTICLE

"I hereby direct that all my just debts, including the expenses of my last illness and funeral expenses, the expenses of the administration of my estate and all Federal and state inheritance, succession and estate transfer taxes or charges be paid out of the corpus of my estate by my executor as soon after my decease as is practical.

#### SECOND ARTICLE

"I hereby give, devise and bequeath to my daughter, MARGARET ELIZABETH PEROTTI, the sum of Five Thousand Dollars ($5,000) in cash.

### Third Article

I hereby give, devise and bequeath to my granddaughter, Nancy Ann Braile, the sum of Five Thousand Dollars ($5,000) in cash.

### Fourth Article

"All the residue of my estate, after satisfying the charges thereon hereinbefore mentioned, I hereby give, devise and bequeath to the NATIONAL BANK OF TOPEKA, Topeka, Shawnee County, Kansas, or its successors, as Trustee, in trust nevertheless for the benefit of my daughter, Margaret Elizabeth Perotti, my granddaughter, Nancy Ann Braile, Linda Locke, adopted daughter of my daughter, Margaret Elizabeth Perotti, and Margaret Annan Freeman, widow of my deceased son, Duane A. Freeman, to be used for their use and benefit in the manner hereinafter described and designated.

"This Trust shall be administered and distributed as follows:

"I hereby direct my Trustee, upon the termination of probate of my estate, out of the property transferred to it by my Executor, and the income therefrom, to pay to the beneficiaries of the trust as follows:

"1. To my daughter, Margaret Elizabeth Perotti, or to her duly appointed and qualified guardian, if my said daughter shall survive me, during the lifetime of my said daughter, so much as shall be necessary to provide her with the necessities of life, such payments to be made monthly in sums not to exceed Two Hundred Fifty Dollars ($250.00), provided, however, that should the condition of the health of my daughter be such that any additional medical and/or hospital expense should become necessary or advisable, then in that event, my Trustee is hereby authorized to expend such sums as may be necessary for such medical expense and/or hospitalization. Upon the death of my said daughter, my Trustee is empowered to spend such sum as may be necessary to cover all funeral expenses.

"2. To my granddaughter, Nancy Ann Braile, if my said granddaughter shall survive me, the sum of One Hundred Fifty Dollars ($150.00) per month, payable monthly, so long as she may live, provided, however, that should medical expense and/or hospital expense become necessary at any time, then in that event my Trustee is hereby authorized to expend such sums as may be necessary for such medical expense and or hospitalization. Upon the death of my said granddaughter, my Trustee is empowered to spend such sum as may be necessary to cover all funeral expenses.

"3. To Linda Locke, the adopted daughter of my daughter, Margaret Elizabeth Perotti, or to her guardian if she be a minor at the time of my death, if the said Linda Locke shall survive me, the sum of Fifty Dollars ($50.00) per month, payable monthly, until she shall have received a total num of Four Thousand Dollars ($4,000).

. . . . . . . . . . . . .

"5. In the event that none of the above named beneficiaries be living at the time of my death and if my daughter, Margaret Elizabeth Perotti, and my granddaughter, Nancy Ann Braile, shall have left issue of their bodies surviving at the time of my death, then in that event the entire net income from the trust estate hereby created shall be paid one-half (½) to the issue of my daughter, Margaret Elizabeth Perotti, share and share alike, and one-half (½) to the issue of my granddaughter, Nancy Ann Braile, share and share

alike, and at the death of such issue, to the issue of their bodies until the youngest shall have reached the age of twenty-one (21) years, at which time the trust shall be terminated and the residue of the estate remaining in the hands of the trustee shall be distributed to such issue as may be then living.

"In the event that none of the above named beneficiaries be living at the time of my death and if either my daughter, MARGARET ELIZABETH PEROTTI, or my granddaughter, NANCY ANN BRAILE, shall have died without issue living at the time of my death and the other shall have left issue surviving at the time of my death, then in that event the entire net income from the trust estate hereby created shall be paid to the issue of either my said daughter or my said granddaughter, whichever leaves issue surviving at the time of my death, and at the death of such issue, to the issue of their bodies until the youngest shall have reached the age of twenty-one (21) years, at which time the trust shall be terminated and the residue of the estate remaining in the hands of my Trustee shall be distributed to such issue then living.

"6. If none of the above named beneficiaries survives me and if both my daughter, MARGARET ELIZABETH PEROTTI, and my granddaughter, NANCY ANN BRAILE, shall have died without issue of their bodies surviving, then in that event I hereby direct my Trustee to pay the residue of my trust estate hereby created to COMMUNITY HOSPITAL OF BELOIT, Kansas.

"7. If at any time during the administration of the trust, the income from the trust shall not be sufficient to make the payments provided for herein, my Trustee is hereby authorized, in its discretion, to make such payments from the corpus of the trust.

"8. I hereby direct that my Trustee herein named shall serve without bond.

### FIFTH ARTICLE

"If the trust hereby created shall not have been terminated for any of the reasons set forth in the Fourth Article of this, my Last Will and Testament, and if neither my daughter, MARGARET ELIZABETH PEROTTI, nor my granddaughter, NANCY ANN BRAILE, shall have at the time of their respective deaths issue surviving, then in that event this trust shall remain in full force and effect until the death of my daughter, MARGARET ELIZABETH PEROTTI, or the death of my granddaughter, NANCY ANN BRAILE, whichever death occurs at the later date, and from and after the date of the death of whichever occurs first, the entire income, subject to the payments provided in paragraphs 3 and 4 of the Fourth Article, shall be paid to the survivor until the date of the death of the survivor, provided, however, that should the payments provided in paragraphs 3 and 4 of the Fourth Article not have been completed, the trust shall continue in full force and effect until all payments due under paragraphs 3 and 4 of the Fourth Article have been paid in full, following which the residue shall be paid by my Trustee to COMMUNITY HOSPITAL OF BELOIT, Kansas.

"In the event my daughter, MARGARET ELIZABETH PEROTTI, at the time of her death, and my granddaughter, NANCY ANN BRAILE, at the time of her death, shall have left issue of their bodies surviving, then in that event the entire net income, subject to the payments provided in paragraphs 3 and 4 of the Fourth Article hereof, from the trust estate hereby created shall be

paid one-half (½) to the issue of my daughter, MARGARET ELIZABETH PEROTTI, share and share alike, and one-half (½) to the issue of my granddaughter, NANCY ANN BRAILE, share and share alike, and at the date of the death of such issue, to the issue of their bodies until the youngest shall have reached the age of twenty-one (21) years, at which time the trust shall be terminated and the residue of the estate remaining in the hands of the Trustee shall be distributed to such issue as may be then living.

"In the event that at the time of my death either my daughter, MARGARET ELIZABETH PEROTTI, or my granddaughter, NANCY ANN BRAILE, shall have died without issue or in the event that either my daughter, MARGARET ELIZABETH PEROTTI, or my granddaughter, NANCY ANN BRAILE, should, subsequent to my death, die without issue and the other shall have left issue surviving, then in that event the entire net income, subject to the payments provided in paragraphs 3 and 4 of the Fourth Article hereof, from the trust estate hereby created shall be paid to the issue of either my said daughter, MARGARET ELIZABETH PEROTTI, or my said granddaughter, NANCY ANN BRAILE, whichever leaves issue surviving, and at the death of such issue, to the issue of their bodies until the youngest shall have reached the age of twenty-one (21) years, at which time the trust shall be terminated and the residue remaining in the hands of my Trustee shall be distributed to such issue as may be then living."

Named in the will as beneficiaries were the following persons or corporations who were then living or in existence:

1. Margaret Elizabeth Perotti, testator's only daughter;

2. Linda Locke, an adopted daughter of Margaret Elizabeth Perotti and her previous husband, Orville Locke;

3. Nancy Ann Braile (now Howell, testator's granddaughter, only child of testator's deceased son;

4. Margaret Annan Freeman, testator's daughter-in-law, the wife of testator's deceased son; and

5. Community Hospital of Beloit, contingent beneficiary of the corpus of the testamentary trust.

All of the above named were living or in existence on the date the will was made and on the date of the testator's death, but Margaret Annan Freeman had remarried and for that reason the bequest to her was ineffective and was by the terms of the will given instead to the testator's granddaughter, Nancy Ann Braile. In addition, Margaret Elizabeth Perotti had adopted a daughter, Michelle, and three children, Daniel Joseph, Linda Ann and Pamela Rose, had been born to Nancy Ann Braile.

On February 24, 1961, Margaret Elizabeth Perotti and Nancy Ann Braile filed a petition in the probate court for construction of will. The petition for construction was transferred to the district court and as amended heard on its merits. The district court entered its judgment upon the amended petition on June 4, 1964. The district court held:

". . . that the testamentary trust to be established under the Will of D. N. Freeman, deceased, be and the same is hereby declared null and void, that all provisions of the Will of D. N. Freeman, deceased, except those relating to the testamentary trust, be and are hereby deemed to be valid and shall be administered accordingly by the Probate Court of Mitchell County, Kansas, and that after having paid all debts, taxes and expenses of administration, as provided in the First Article of the Will of D. N. Freeman, deceased, and after having paid over to the named beneficiaries, the specific bequests, provided for in the Second and Third Articles of the Will of D. N. Freeman, deceased, the Executor, The First National Bank of Topeka, shall convey and set over all of the residuary estate to the testator's heirs at law under the laws of intestate succession, all of the foregoing actions to be taken in accordance with and under the probate jurisdiction of the Probate Court of Mitchell County, Kansas, and in conformity with the judgment and decree of this Court, as hereinabove set forth."

The effect of the court's decree was to uphold the first three articles of the will and void the balance, leaving the greater part of the estate to pass intestate.

The executor has appealed.

The appellant frankly concedes that some of the alternative contingencies are too remote to avoid the application of the rule against perpetuities.

The common law rule against perpetuities has long been in force in Kansas. (*In re Estate of Dees,* 180 Kan. 772, 308 P. 2d 90.) The rule has reference to the time within which the title vests and it is not concerned with the postponement of enjoyment or possession. (*In re Estate of Swingle,* 178 Kan. 529, 289 P. 2d 778.) It prevents the creation of any future interest in property which does not vest within twenty-one years after some life or lives presently in being plus the period of gestation if gestation is in fact taking place. (*In re Estate of Davis,* 171 Kan. 605, 611, 237 P. 2d 396.) *In re Estate of Woods,* 181 Kan. 271, 311 P. 2d 359, states at page 280 of the opinion:

"The rule against perpetuities has been stated many times and in *In re Estate of Davis,* 171 Kan. 605, 237 P. 2d 396, it was again set out as meaning that no future interest in property can lawfully be created which does not necessarily vest within twenty-one years after some life or lives presently in being, excluding from such computation of years the incipient life of infants *in ventre sa mere.*

"Broadly stated, the rule against perpetuities is grounded traditionally on a farsighted public policy which frowns on the total exclusion of property from commerce for long periods of time and is supported by the practical needs of modern times (*Lasnier v. Martin,* 102 Kan. 551, 554, 171 Pac. 645); it governs both legal and equitable interests, and interests in both realty and

personalty. (Gray, The Rule Against Perpetuities, 4th ed., § 202, p. 192.) In *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288, this court set out the rule that no remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested. Courts are inclined toward a construction favorable to the early vesting of an estate so as not to defeat the intent of the testator but there must necessarily be a vesting within the limits of the rule against perpetuities. (*Klingman v. Gilbert*, 90 Kan. 545, 548, 549, 135 Pac. 682; *Trethar v. Aged Ministers Home*, 180 Kan. 18, 21, 299 P. 2d 58.)"

In ruling upon whether a future interest violates the rule against perpetuities, speculation concerning the probabilities of various subsequent developments is not indulged in by the courts. It is a sufficient violation of the rule if an interest might possibly vest beyond the period permitted. The test for determining whether an interest violates the rule is simple: Can a hypothetical case be posed, based upon the facts as they existed at the date of the testator's death, in which the interest will vest later than lives in being and 21 years? If so, the interest in question is void.

The testator, in the terms set forth in Article Fifth of his will, has provided for three inconsistent alternative contingent gifts of the same corpus interest. Only one of these gifts can take effect. Each alternative gift depends upon the occurrence of the event upon which it is contingent for its effectiveness. Which gift of the three will ultimately take effect can only be known upon the occurrence of one of the three inconsistent events upon which that gift only is dependent.

The appellant in substance suggests that the gift of the corpus of the estate, and two other possible class gifts of income, are made contingent upon three separate events and given in the alternative by the Fifth Article in the following manner:

FIRST. If Margaret and Nancy leave no issue surviving them at the date of their respective deaths, whichever occurs later, the entire corpus of the trust is given out-right to the Community Hospital of Beloit, Kansas.

SECOND. If Margaret and Nancy both leave issue (it is suggested that the context indicates that "issue" was used by the testator to mean children) surviving them at the time of their respective deaths, one-half of the net income from the trust is given to the surviving children of Margaret for life and one-half to the surviving children of Nancy for life. At the termination of these life income class gifts, a second class gift of income is given to the

surviving grandchildren of Margaret and Nancy until the youngest shall reach twenty-one years of age. When the youngest grandchild reaches twenty-one, the corpus of the trust is then given outright to such grandchildren as may then be living.

THIRD. If Margaret or Nancy, but not both, leave issue (used to mean children) surviving her death, a life income gift is given to those children. Upon the termination of this life income class gift, a second class gift of income is given to the surviving grandchildren of either Margaret or Nancy until the youngest of such grandchildren reaches the age of twenty-one years. When the youngest of the grandchildren reaches the age of twenty-one, the corpus is given outright to such grandchildren as may then be living.

In the case at bar the contingent income gift to the grandchildren of Margaret and Nancy and the ultimate contingent disposition of corpus to those same grandchildren under the second and third Alternative Contingent Gifts above, violate the rule. A hypothetical case based upon the facts at the date of the testator's death can easily be posed whereby these interests vest later than the time period permitted by the rule against perpetuities.

The remorseless construction and the infectious invalidity rule was followed at one time by most courts recognizing the rule against perpetuities. If there was a possibility that any part of a devise might vest beyond the period permitted the entire devise was stricken down.

Later the intention of the testator was made the "pole star" in construing ambiguous language contained in a will, and, by the same token, many courts sought to make the desire or wish of the testator the controlling factor in determining what parts of a devise would be permitted to remain where some of the provisions could not be harmonized with the rule against perpetuities. It will be understood that none of the courts found fault with the general purpose of the rule which was to prevent dispositions which tie up property for remote periods. It was the infectious invalidity rule that came under criticism. If some of the contingencies are too remote there would appear to be no reason why the valid contingencies should fall if it appears that standing alone they would have been desired by the testator.

An effort to escape the harsh application of the rule against perpetuities has fostered numerous named doctrines and many independent decisions which have caused considerable confusion. Our

attention has been called to the "wait and see" doctrine, the "second look" doctrine, the "alternative contingency" doctrine, "striking modifying clauses" doctrine and the "partial invalidity excision" doctrine.

Under the "wait and see" doctrine the courts "wait and see" to determine whether the contingency happens within the period of the rule. A judicial decision is simply postponed until all possible valid contingencies and possibilities for vesting has occurred. (Simes and Smith, The Law of Future Interests, § 1230, p. 126.)

This court has not and does not now place its approval on the "wait and see" doctrine. The creating instrument takes effect upon the death of the testator, the contingent future interest immediately comes into existence and the validity of the interest should be determined as of that time.

The "second look" doctrine indicates a further tendency on the part of the courts to be as lenient as possible in the application of the rule which tends to defeat the testator's intention and desire. This doctrine is applied in situations where the instrument creating the life estate gives the life tenant power or authority to appoint or select his successor in interest. Under the early law in order to determine the validity of the appointment or selection it must be read back into the original instrument creating the power—the computation of time was to begin with the date of the original instrument. The "second look" doctrine qualified the foregoing rule by permitting the words used by the donee of the power in appointing or selecting his successor to be construed as they are at the time the power is exercised. (Morris and Leach, The Rule Against Perpetuities, p. 143.) The brief summation is sufficient to refute appellees' contention that the theory the appellant would apply is nothing more than the "second look" doctrine. There is no power of appointment extended, therefore the doctrine has no application to the facts before us. Any further discussion of this particular doctrine would be unwarranted.

The "alternative contingency" doctrine is explained in 41 Am. Jur., Perpetuities and Restraints on Alienation, § 59, p. 102, as follows:

"Sometimes a devise is made to take effect on either one of two alternative conditions, one of which may not occur within the period of time allowed by the rule against perpetuities, and the other being one which must occur within that period, so that the validity of the devise depends on the actual happening of one or the other of the two mutually exclusive conditions. In

such a case the contingencies are considered separable for purposes of the rule against perpetuities, and the invalidity of one will not affect the validity of the other. For purposes of the rule against perpetuities the alternative gift is treated as two gifts. So far as the gift over depends upon the single event which may or may not happen within the required time, it is void, and the actual happening of the event within that time cannot make it good; but, so far as it depends upon the alternative event, which must happen, if at all, within the limit of the rule, the gift over is good, and if that event actually does happen the estate will take effect without regard to the consideration that upon a different contingency, which might or might not happen within the lawful limit, the limitation would .be void for remoteness." (See, also, 70 C. J. S., Perpetuities, § 6 (2), p. 582.)

Under this doctrine the nature of the contingent interest and the time it will vest, if ever, is determined as of the effective date of the instrument creating the devise. It is this doctrine that appellant contends should be applied to the devise under consideration.

Perhaps the next two matters to be discussed should be designated as "rules of construction" rather than "doctrines." However, their importance in the field of the law under consideration requires that they be treated with the same dignity as the first three doctrines discussed.

The "striking the modifying clause" doctrine means just what the language indicates. Where the language creating a gift contains a clause which taken by itself is sufficient to create an outright gift which is valid under the rule against perpetuities but a second clause appears which expresses a different intent and declares a life estate plus a remainder which is void under the rule, the qualifying clause will be stricken and the valid clause permitted to stand. (American Law of Property, Vol. 6, § 25.28, p. 233.)

The "partial invalidity excision" doctrine has been the one most commonly used by the courts not wedded to the "infectious invalidity" rule. In case the failure to vest title within the time limits of the rule against perpetuities causes the invalidity of part but not all of the limitations in a devise under a will, the invalid parts will be deleted and the valid limitations permitted to stand. (American Law of Property, Vol. 6, § 25.65, p. 321.) This doctrine, as all others, is subject to the general proposition that if the deletion of a part causes a distortion of the testamentary plan the entire devise must fall.

There would appear to be nothing in the three doctrines or rules of construction, last discussed, which would in anyway conflict with the disposition this court has made of devises some part of which violated the rule against perpetuities.

This court has never adhered to the classical view of "remorseless" construction developed in England. Neither has it become a slave to the rule of "infectious invalidity." On finding an instrument ambiguous this court has gone far in resolving the ambiguity in favor of the construction which will uphold the gifts. (*Klingman v. Gilbert*, 90 Kan. 545, 135 Pac. 682.) It has also gone far in striking invalid provisions and leaving valid provisions stand where the procedure appears to be in harmony with the wishes of the donor. The appellees contend that if we strike a part of the will and leave the remainder stand we are rewriting the testator's will. They also contend:

"The rule aganst perpetuities is an arbitrary one, applied for the purpose of preventing an owner of property from controlling its devolution beyond a certain period. It is not a rule of construction. In the application of the rule, every provision of the will or deed is to be construed as if the rule did not exist, and then, when the real intent of the testator in a will, or the grantor in a deed, is determined, the rule is remorselessly applied, and if the paper thus construed offends the rule, it will not be allowed to stand."

We do not agree. As previously stated we do not approve of the remorseless rule of construction. Neither do we believe that the infectious invalidity rule should be remorselessly applied. Striking of void provisions does not place the court in the position of rewriting the testator's will. The rule itself renders nugatory the invalid parts. We cannot assume that because the testator could not have all that he desired that he wanted no part. The deleting of invalid provisions and leaving the valid ones stand does no violance to the purpose of the rule against perpetuities, which is to keep property alienable within the reasonable limits fixed by the rule.

At this point an analysis of our past decisions may be helpful.

In *Dreisbach v. Spring*, 93 Kan. 240, 144 Pac. 195, the testator's will provided that his property was to be held in trust for the use and benefit of his four named grandchildren, "or the survivors of them, during their natural lifetime, but only the net income from said real and personal property thus held in trust shall be paid to my said grandchildren or their survivors in equal shares, said income to accumulate in the hands of the trustee until each of said grandchildren becomes of age, when its respective share is to be paid to it, and thereafter to be paid annually, and at the death of the last survivor of my said four grandchildren all of the estate held in trust, both real and personal, shall be 'equally divided between the heirs of my said grandchildren being issue of their bodies,

but should they all die without issue, then said estate is to go to the heirs at law of my brothers and sisters and their heirs and assigns forever. . . ." The clause which provided that should the four grandchildren all die without issue the estate should go to the heirs at law of the testator's brothers and sisters and their heirs and assigns forever was held void in the district court as in violation of the rule against perpetuities. On appeal it was argued that the void provision destroyed the entire will. This court held:

"When one provision of a will falls for illegality the remainder is not thereby avoided when it appears that the illegal part has reference to a contingency so remote and improbable as to lead fairly to the conclusion that the testator did not deem it of controlling importance." (Syl. 4.)

In *Blake-Curtis v. Blake,* 149 Kan. 512, 89 P. 2d 15, a provision in the will directed the executor to control and manage testator's ranch until he could sell the same for $20 per acre or an aggregate sum of $40,000, and then to divide the proceeds among certain named children. The direction to hold the property was held to violate the rule against perpetuities, however, it was held:

"Where one provision of a will is invalid because it violates the rule against perpetuities, and the testamentary scheme of the testators can be determined and carried out regardless of the void provision, that provision will be stricken out and the testamentary plan given effect." (Syl. 3.)

In *Beverlin v. First National Bank,* 151 Kan. 307, 98 P. 2d 200, it is stated in the syllabus:

"A testator devised and bequeathed to each of his two daughters real and personal property to be held in trust until such time as each daughter should attain the age of forty years, at which time the property should be turned over to them; it was further provided that in the event of the death of either daughter without legitimate child or children of their body, the share of such daughter would go to the other living daughter, but in case of the death of either daughter leaving a legitimate child of her body, the share of such daughter should be held in trust until the period when such daughter would have attained the age of forty years, provided such child or children had arrived at the age of twenty-five years, if not, to be held in trust until such time as the age of twenty-five is reached. *Held,* the gift to the grandchildren of the testator upon attaining the age of twenty-five years violates the rule against perpetuities and is void; that if either daughter should die under the age of forty without legitimate child or children of her body, her share in the estate would go to the living daughter; that should either or both daughters attain the age of forty years the trust would terminate and the share of either or both daughters attaining such age would become indefeasibly vested."

The Beverlin case followed paragraph 3 of the syllabus in the Blake-Curtis case previously quoted.

In *McEwen v. Enoch,* 167 Kan. 119, 204 P. 2d 736, it was stated in the syllabus:

"1. In an action for a declaratory judgment to construe a written trust agreement, where the record discloses the purported trust was created for the benefit of settlor's eleven- and fifteen-year-old grandchildren with the legal title to the corpus in a trustee, and the income to be used for the benefit of the two grandchildren until the younger of them reached the age of forty if she lived, or until such time as she would have reached the age of forty, at which time the trust was to terminate and the property pass absolutely to the grandchildren or their issue or heirs as provided in the trust agreement, it is *held,* that upon the creation of the purported trust, the two grandchildren by its terms took only a contingent interest with the possibility of its vesting being delayed longer than a life or lives in being and twenty-one years, which violated the rule against perpetuities, and the trust was void.

"2. In an action such as described in syllabus paragraph 1, where the trust, as such failed of existence, *every effort will be made to carry out the ultimate intent of the settlor,* and the gift to the two grandchildren beneficiaries will be accelerated so as to become an absolute gift to them as of the time the purported trust was created." (Syl. 1 and 2. Emphasis supplied.)

Although what was done in the McEwen case was called "acceleration," it amounted to nothing more than a deletion of the void provisions.

*In re Estates of Dees,* 180 Kan. 772, 308 P. 2d 90, has not been overlooked. However, the case discusses both the rule against perpetuities and the common law rule against restraints on alienation. The two rules were not distinguished and it is difficult to determine which rule carried the most weight. The fifth paragraph of the syllabus is in harmony with the cases heretofore discussed. It reads:

"Where one provision of a will is invalid because it violates the rule against perpetuities, and the testamentary scheme of the testator can be determined and carried out regardless of the void provision, that provision will be stricken out and the testamentary plan given effect."

Our last consideration of the questions is to be found in *In re Estate of Foster,* 190 Kan. 498, 376 P. 2d 784, 98 A. L. R. 2d 795. The clause of the will under consideration was summarized by the court as follows:

"The testatrix Sarah G. Foster had created a trust which included practically her entire estate, which is of considerable worth, and provided that Miriam F. Ball would receive an income of fourteen-twentieths (14/20) of the income for life and six-twentieths (6/20) of the income to be reinvested in the trust property or new property and that the trust should not be distributed until the time the 'youngest child of the body, and not by adoption, of my daughter,

Miriam F. Ball, reaches the age of twenty-three (23) years, or at the death of my said daughter, Miriam F. Ball, whichever event occurs the later, in the following manner and in the following shares, to wit.' The gift was to the children of the body of the daughter Miriam, and to any issue of predeceased children *per stirpes*." (p. 499.)

It was stated on page 504 of the opinion:

"We are quite well aware that under paragraph Fifth L. 3 of the will, it is provided that distribution shall take place at the time 'the youngest child . . . of my daughter, Miriam F Ball, reaches the age of twenty-three . . . or at the death of my said daughter, Miriam F. Ball, whichever event occurs the later. . . .

"But whatever else is true, it is also plain that the will can validly provide that distribution may be postponed until after the death of Miriam—a life in being. It comes quite readily to mind that the ideas of the testatrix can probably be carried out if the invalid provisions as to the age of twenty-three years—as it relates to the grandchildren—be stricken and the trust made to terminate at the time of the death of the daughter Miriam."

Both parties have cited numerous cases in support of their various contentions. The cases are of very little aid to us. It may be safely said that at the present time cases may be found to support any theory that might possibly be presented in connection with the rule against perpetuities.

Appellees also suggest that the devise violates the common law rule against accumulations. We cannot agree. The income from the trust was to be accumulated in part only until the deaths of Margaret and Nancy who are lives in being. After their death the entire net income from the trust was to be distributed. There could be no further accumulation after the deaths of the lives in being, therefore, the accumulation anticipated by the will did not violate the common law rule against accumulations. The rule against accumulations is concerned only with the time of accumulation and not with the dollar amount. Kansas must follow the common law rule since we have no statute. (*In re Estate of Yetter*, 183 Kan. 340, 328 P. 2d 738.) The leading American case on accumulations at common law is generally said to be *Gertman v. Burdick*, 123 Fed. 2d 924. In that case it was held that the period of limitations for accumulations is the same as the common law rule against perpetuities, i. e. lives in being plus 21 years. This court discussed the common law rule in *In re Estate of Foster*, supra.

It is obvious that the testator's dominant purposes were:

1) to provide life interests only for Margaret and Nancy and thus prevent their dissipating the corpus of the estate,

2) to vest the corpus of the estate in the Community Hospital of Beloit should Margaret and Nancy die without leaving issue,

3) to leave the issue (children) of Margaret and Nancy, if any, a life interest only,

4) to vest the title to the corpus in the grandchildren of Margaret and Nancy, if any, when the youngest reached the age of 21 years.

It is conceded that the testator's purposes 3 and 4 violate the rule against perpetuities and are void. However, purposes 1 and 2 do not offend against the rule.

We conclude that the devise to Margaret's and Nancy's issue and then to the issue of the body of such issue when the youngest reaches the age of 21 is void and must be stricken.

The life interests devised to Margaret and Nancy are valid and will be permitted to stand. If they should die without leaving issue the property covered by the trust will pass in fee to the Community Hospital at Beloit. If they should die and either of them leave issue the trust must fail.

At this point we no doubt have followed the doctrine of "alternate contingencies." However, if we follow that doctrine alone and permit the valid provisions to stand without striking the void contingencies the trust must fail at the death of either Margaret or Nancy whichever dies first leaving issue, because it is then known that the valid alternate contingency can never take effect. We see no reason why the testator's valid wish, definitely expressed, should not be carried out, and Margaret and Nancy continue to receive the income under the provisions of the will until they are both deceased.

There remains to be determined what disposition should be made of the corpus of the estate when and if the trust fails. The question was considered by this court in *Kirkpatrick v. Kirkpatrick*, 112 Kan. 314, 211 Pac. 146, where a trust was in violation of the rule against perpetuities but the will contained a residuary clause. It was held:

"The void devise fell into the residuum, and was disposed of by the residuary clause, the rule of the common law, that a lapsed or void devise goes to the heir, having been abrogated by the statute of wills." (Syl. 3.)

It was stated in the opinion:

". . . There is no policy in this state to keep any class of property in a favored channel of inheritance as against a will, and when there is a will the presumption is against intestacy. The rule that a lapsed devise, in a will with a residuary clause, was not disposed of and went to the heir, contravened the intention of the testator, compelled him to die intestate with reference to

a portion of his property when he had indicated a contrary desire, and is not in harmony with the policy underlying our law. The result is, this court could not, if called on to do so, state a satisfactory reason for making a present-day distinction between the destination of a lapsed devise and of a lapsed legacy, in a will containing a residuary clause applicable to each." (p. 329.)

We would suggest that if it clearly appears that passing the property under the residuary clause will tend to distort the testator's desire, then the property may pass the same as if there was no residuary clause.

The will which we are considering does not contain a residuary clause. In the absence of such clause we are forced to conclude that should the trust fail on the death of both Margaret and Nancy, because either leaves issue, the corpus of the trust passes to the heirs of the testator by intestate succession. (*Lasnier v. Martin,* 102 Kan. 551, 171 Pac. 645.)

The judgment is reversed and the case remanded for such further proceedings as are necessary and not inconsistent with this opinion.

APPROVED BY THE COURT.

FONTRON, J., not participating.

FATZER, J., dissenting: The appellant and the majority opinion concede that the common-law rule against perpetuities is in force and effect in this state, and further concede that the devise in paragraph V of the will creates contingencies which will not vest in interest within the period of time prescribed by that rule. Those concessions should terminate the litigation and require this court to affirm the judgment below.

While the majority opinion concedes that the devise in question violates the rule against perpetuities, the court proceeds to use the scissors on those provisions which violate the rule and "cut out" or in legal parlance "excise" the invalid portions and declare the remaining provisions of the devise to be valid and unaffected. In my judgment, the devise is wholly valid or wholly invalid. All the various doctrines advanced in the majority opinion are only a means to circumvent full application of the rule against perpetuities. I adhere to my dissent in *In re Estate of Foster,* 190 Kan. 498, 507, 376 P. 2d 784, 98 A. L. R. 2d 795, and cases cited therein, and I would affirm the judgment of the district court.