No. 44,476

Kenneth L. Meyer, Executor of the Estate of Barbara Benelli, also known as Anna Barbara Benelli, Deceased, *Appellee*, v. Andrew J. Benelli, individually and as Executor of the Estate of D. P. Benelli, Deceased; Charles A. Benelli, Martin Benelli; David Paul Benelli; Isabelle Glick, and Margaret Vietti, *Appellants*.

(415 P. 2d 415)

Opinion filed June 11, 1966.

A. *Staneart Graham*, of Pittsburg, argued the cause and was on the briefs for the appellants.

*John B. Towner*, of Pittsburg, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from a summary judgment rendered in an action to recover items of personal property.

The facts are to be found in the petition and answers to interrogatories.

The petition alleged that plaintiff is the executor of the estate of Barbara Benelli, deceased, and at the time of her death on October 15, 1964, she was the owner and in possession of the following items of personal property: one silver tea set composed

of tea pot, sugar bowl, creamer and tray; one silver gravy bowl; one electric roaster, and one set of Castleton China ware.

The petition further alleged:

"That subsequent to the death of the said Barbara Benelli, . . . the defendants wrongfully took possession of said items of personal property, and have wrongfully retained possession of said items, notwithstanding repeated demands by plaintiff for the possession of same."

The answer was a general denial.

After the issues were framed by the pleadings both parties started discovery by interrogatories.

The defendants in their answers to the interrogatories stated that the items in dispute had been purchased by D. P. Benelli and were in the possession of his widow, Anna Barbara Benelli, at the time of her death but were now in the possession of the defendant, Andrew J. Benelli. Other pertinent questions and answers were as follows:

"9. Do defendants claim that the articles of personal property here in dispute belonged to D. P. Benelli at the time of his death.

"A. Yes.

.    .    .    .    .    .    .    .    .    .    .    .    .

"12. If your answer to No. 9 is yes, state by what means you claim to have gained title from D. P. Benelli.

"A. By the terms of the Will of D. P. Benelli.

"13. If you claim to have gained title from D. P. Benelli by testamentary bequest, please quote the paragraph of the Will of D. P. Benelli containing such bequest.

"A. Paragraph VII of the Will is as follows:

"I give, devise and bequeath to my wife, Barbara Benelli, my home together with all of my household furniture and household effects at 304 West Webster, Pittsburg, Crawford County, Kansas, described as Lot One Hundred Twenty-one (121) in the Stilwell Place, an addition to the City of Pittsburg, Kansas, for her use as a residence, rent free, for and during her natural life, but in the event that my wife, Barbara Benelli, shall decide not to reside in said house, then, in that event, said land and house, shall become vested in my residuary legatees, Charles A. Benelli, Andrew J. Benelli, Martin Benelli, David Paul Benelli, Isabelle Glick, and Margaret Vietti, share and share alike."

The plaintiff, after receiving the answers to the defendants' interrogatories, filed a motion for summary judgment joining issues with the defendants as to the title to the property under the will of D. P. Benelli. When the matter came on for hearing plaintiff withdrew his claim for damages for wrongful detention and defendants were granted leave to introduce as exhibits a copy of the will of D. P. Benelli and a copy of the antenuptial agreement between D. P. Benelli and Barbara Meyer, his second wife.

The trial court submitted a well written memorandum opinion in which it concluded that the ownership of the property was to be determined from a construction of the will of D. P. Benelli, leaving only a question of law, hence summary judgment was a proper remedy. The court further concluded that the will gave the items of personal property to Anna Barbara Benelli, and gave judgment to plaintiff, the executor of her estate.

The defendants have appealed.

Appellants complain of the disposition of the case on a motion for summary judgment. They contend that the petition stated a cause of action when it alleged title and right to immediate possession, and when the answer denied appellee's title, a clear cut issue of fact was presented. They state:

". . . When the petition states a cause of action, and the answer states a defense denying the allegations of the petition, a motion for judgment on the pleadings will not lie. . . ."

The appellants cite numerous cases which apply to motions for judgments on the pleadings under the old Code of Civil Procedure but have no application to motions for summary judgments.

The summary judgment statute, K. S. A. 60-256 (c), insofar as material here, reads as follows:

". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

Under the answers to the interrogatories, ownership of the property was to be determined by the will of D. P. Benelli. This left only a question of law on the construction of the will. As no issue of fact remained the question was ripe for declaratory judgment. It may be pointed out that the records show no suggestion by appellants in the trial court that they had any additional facts or defenses and they made no effort to inform this court of any additional facts constituting a defense. A party cannot escape summary judgment on the mere hope that something may develop at the trial, or by remaining silent and later claiming additional facts supporting a defense.

Neither is the fact that the allegations in the pleadings create genuine issues of fact controlling. The rule was intended to permit a party to pierce the allegation of facts in his opponent's pleadings by affidavits and discovery, thus controlling the formal issues

presented by the pleadings. (*Dixon v. American Telephone & Telegraph Co.*, 159 F. 2d 863, cert. den. 332 U. S. 764, 92 L. ed. 350, 68 S. Ct. 69; *Engl v. Aetna Life Ins. Co.*, 139 F. 2d 469, 472.)

The appellants seek further to avoid a determination of the title to the items in controversy by a construction of the will on the theory that appellee has by his action violated a noncontest provision therein. The will contained an *in terrorem* clause forfeiting any legacy to any beneficiary who should sue to contest the will on any grounds or disturb the executor in the performance of his duties.

The provision has no application to the acts of the appellee in this case. The appellee was simply seeking an interpretation of the provisions of the will under which both parties claimed title. He does not attempt to contest the will or have any of its provisions invalidated.

Although this court has not had occasion to pass directly on the question before us, it is the very general rule that a party who participates in an action for the construction of a will or some part thereof, whether as plaintiff or defendant, does not come within the provisions forfeiting the share of a beneficiary instituting a contest or other proceeding in opposition to the instrument. Those wishing to research the question will find a well written annotation in 49 A. L. R. 2d 198. This court has announced that a bona fide belief in the invalidity of a will prevents the application of an *in terrorem* clause as to a beneficiary under a will. (*In re Estate of Foster*, 190 Kan. 498, 376 P. 2d 784.) However, we do not reach that point in the case now before us.

We now reach the more difficult problem—what was the testator's intent as gathered from the admitted ambiguous provisions of the will as to the household furniture and fixtures? The life estate in the real estate is not questioned.

All parties agree that a rule for the construction of wills, to which all other rules are subordinate, is that the intention of the testator, as garnered from all parts of the will, is to be given effect, and that doubtful or inaccurate expressions shall not override the obvious intention of the testator. (*Beall v. Hardie*, 177 Kan. 353, 279 P. 2d 276; *In re Estate of Charowhas*, 181 Kan. 322, 310 P. 2d 947; *In re Estate of Freshour*, 185 Kan. 434, 345 P. 2d 689; *Parsons v. Smith, Trustee*, 190 Kan. 569, 376 P. 2d 899; *Giese v. Smith*, 195 Kan. 607, 408 P. 2d 687.)

Our difficulty is that the intention of the testator is not obvious but hidden in the confusing language used. Neither do the other

parts of the will aid us in the construction of paragraph VII. They are simply devises of specific property to the testator's seven children.

We would read the language used in the will in the light of the circumstances under which it was written, including the condition, nature and extent of the testator's property and his relations to his family and to the beneficiaries named in the will, as we are bound to do. (*Guthrie v. Guthrie,* 130 Kan. 433, 286 Pac. 195; *In re Estate of Yetter,* 183 Kan. 340, 328 P. 2d 738.) However, the only circumstances disclosed by the record is an antenuptial agreement to the effect that title to the property of the intended husband and wife would remain separate and neither would have any interest in the property of the other. Both Pompeo and Barbara had been previously married and both had children by their first marriage. The antenuptial agreement was executed about two years before the will.

It might be argued that the antenuptial agreement shows an intention to keep the separate property in the separate families and thus indicates only a use of the household furniture and effects for life, but the antenuptial agreement contained the following specific statement:

"And it is further agreed, that nothing herein shall be construed to be a bar to either party to this agreement giving any property of which they may be possessed to the other party by will or otherwise. . . ."

The quoted provision would appear to anticipate a gift of property of one to the other by will and destroys any inference of less than an absolute gift.

Finding no aid in the other provisions of the will or in the circumstances under which it was written, we must center our attention on the specific language of paragraph VII and search for more specific rules of construction applicable to the language used and nature of the property covered by the devise.

Stripped of unnecessary verbiage covering the description of the real property and the residuary legatees, paragraph VII of the will reads:

"I give, devise, and bequeath to my wife, . . . my home together with all of my household furniture and household effects . . . for her use as a residence, rent free, for and during her natural life, but in the event that my wife, . . . shall decide not to reside in said house, then, in that event, said land and house, become vested in my residuary legatees, . . ."

It will be noted that the clause devises two distinct types of property, *i. e.,* the "home" which is real estate, and the household

furniture and effects which is personal property. None of the property is devised over after the death of the wife but vests in the residuary legatees by direction only in case the wife fails to reside in the home.

We also note that the clause devising the home and household furniture and effects standing alone creates a gift absolute.

We call attention to the fact that the subsequent words of limitation which reduced the devise to a form of life estate used words which are only applicable to real estate. The first depreciatory clause reducing the devise to the wife's natural life uses the terms "use as a residence," "rent free." "Resident" and "rent" are terms normally applied to real estate and not to items of household furniture and effects. The second limiting clause vesting the property in the residuary legatees if the wife does not reside in the house uses only the descriptive words "land and house." The words apply only to real estate and could not reasonably be construed to include household furnishings and effects which were separately described at the beginning of the paragraph.

There are specific rules of construction which will give us some aid in construing the language in controversy. Ordinarily words pertaining to realty do not include personal property. The use of the word "home" or residence would not include the household effects.

In *Mann v. Haines,* 146 Kan. 988, 73 P. 2d 1066, we held:

"Ordinarily a devise of realty does not include personalty, and in view of all the provisions contained in the instant will, including the devise of a—'home'—to a city, subject only to a life estate in another, it is held it was not the intention of the testatrix the words 'my home' should include the furniture, rugs and equipment used in connection therewith, or the garden tools and the family automobile." (Syl. 3.)

It would appear that the converse would apply and limitation clauses using words only applicable to realty would not limit a devise of personal property.

The trial court followed another rule of construction in concluding that the household furnishings and effects were devised as a gift absolute. That was the well established rule that a gift in clear terms cannot be taken away or diminished by later obscure and ambiguous provisions and to diminish an absolute gift it is necessary to find or supply language equally as plain and unequivocal as in that of making the gift, expressing an intention to limit the gift already made.

In *In re Estate of Cribbs,* 180 Kan. 840, 308 P. 2d 111, it was held:

"To diminish an absolute gift, it is necessary to find or supply language in the later clause equally as plain and unequivocal as in that of making the gift, expressing an intention to limit the devise already made." (Syl. 3.)

The rule was also announced in *Donohue v. Skinner*, 118 Kan. 215, 234 Pac. 1000.

We find no reference, even by implication, to household furniture and effects in the diminishing clause under consideration. Had the testator intended to include the household furniture and effects in the diminishing clause he had only to add after the use of the words "said land and home" the phrase "together with household furniture and effects."

We are also influenced by the fact that personal property, as a general rule, is not readily adaptable to the law of future interests. Although the testator might, and evidently did, want to control the real estate if the wife ceased to use it as a home, there is nothing to indicate that he would want to deprive her of the household furniture and effects if she saw fit to move to a new home. The general rule pertaining to a devise of personalty is well stated in 96 C. J. S., Wills, § 833, p. 264. We quote.

"In case of doubt as to the extent of interest in personalty given by testamentary provision, a construction in favor of an absolute interest is favored, and a gift of personalty is to be deemed unconditional unless the testator clearly indicates the limitations he desires imposed on the gift. So, where language in a will clearly purports to pass an estate or interest, it will not be construed as passing a lesser interest than an absolute one unless there is clear language showing an intent to pass such lesser interest."

The appellants place great stress on the use of the word "together" as used in the phrase "my home *together* with all my household furniture." The word "together" does not support appellants' contention because it is used in the devise absolute but is not carried over into the diminishing clause.

Applying the rules of construction applicable to a devise of personalty we are constrained to agree with the trial court that the household furniture and effects were intended to be devised to the wife, Barbara Benelli, as an absolute gift.

The judgment is affirmed.

APPROVED BY THE COURT.

FONTRON, J., dissenting: As I view the court's opinion, it correctly states the venerable rule that in the construction of wills the intention of the testator, as gathered from the will's four corners, is to be given effect, but it then fails to apply that rule.

It may be granted that the language of Paragraph VII of the will is confusing, as the court has termed it. But, although its provisions are inartistically phrased, I have no difficulty in discerning from the language used an intent on the testator's part to provide his second wife with a furnished house for so long as she lived or should occupy the residence. To me, this is a far more logical construction to place on the phraseology employed by the testator than an intent on his part to *give* her the furnishings, including the family silver, outright.

In my opinion, the will, in its entirety, evidences the testator's desire that title to all his property, including personalty, should vest in his own children subject to the occupancy of his widow. Paragraph VII carries out such a design, if it be construed, as I think it should, to make available to the second Mrs. Benelli a furnished home during her life or so long as she occupied the same.

Since I believe that Mr. Benelli's intention can be deduced from the will itself, as viewed in the context of his second marriage, I see no reason to search for or apply additional rules of construction. I would reverse the judgment and, therefore, respectfully dissent.

PRICE, C. J., and FATZER, J., join in the foregoing dissent.